## GARCIA v. AMERICAN NAT. INS. CO.
### No. 1504—6253.

Commission of Appeals of Texas, Section B.
Jan. 23, 1935.

G. Woodson Morris, of San Antonio, for plaintiff in error.

Carter & Carter, of San Antonio, for defendant in error.

RYAN, Judge.

This case originated in the county court of Bexar county, and the Supreme Court therefore has no jurisdiction unless there has developed a conflict between the decision of the Court of Civil Appeals therein and that of another Court of Civil Appeals or of the Supreme Court. Article 1821, Rev. St. 1925, as amended, 41st Leg. c. 33, § 1 (Vernon's Ann. Civ. St. art. 1821). If no conflict exists, the Supreme Court has no jurisdiction to decide other questions, and although writ of error has been granted, it should be dismissed if upon further consideration the court determines that jurisdictional grounds are wanting. City of Abilene v. McMahan (Tex. Com. App.) 292 S. W. 525.

Conflict in decisions must be upon a question of law involved and determined and such that one decision would overrule the other if both were rendered by the same court. The conflict must be well defined. An apparent inconsistency in the principles announced or in the application of recognized principles is not sufficient. The rulings must be so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other. The ruling must be upon the same question, and unless this is so, there can be no conflict. Garitty v. Rainey, 112 Tex. 369, 247 S. W. 825; Jones v. Hickman, 121 Tex. 405, 48 S.W.(2d) 982; Mooers v. Hunter (Tex. Com. App.) 67 S.W.(2d) 860.

This suit was brought by Gertrudis Garcia as surviving wife of Anacleto G. Garcia against the American National Insurance Company, to recover the sum of $500 alleged to be due upon a policy of insurance on the life of her said husband, as well as attorney's fees and penalty.

The policy is dated March 6, 1922, and on May 4, 1922, Garcia left his home in San Antonio, Tex., for Tampico, Mexico, to obtain employment. He was a telegraph operator and could not obtain employment as such in San Antonio because he could not speak English.

The family emigrated from Mexico to San Antonio, Tex., about 1913 or 1914, where they operated a small grocery business; when Garcia left he told his wife he was going to Mexico to look for work because the profits from the store "were not enough." She still carries on the grocery business. He wrote his wife from Tampico, Mexico, where he re-

mained about two months, then went to Torreon, Mexico. She testified that she received two letters from him, written at Torreon, and although she wrote him to Tampico and one letter to Torreon, she heard nothing further from him after he wrote said two letters from Torreon, which was two or three months, more or less, after he left Tampico.

The wife seeks recovery based upon the presumption of death after an absence of more than seven years.

Two trials have been had. Upon the first trial the court instructed a verdict for her and judgment was accordingly rendered, which was reversed by the Court of Civil Appeals and the cause remanded on the ground that when it was disclosed that Garcia had moved and was living in Mexico after leaving San Antonio the burden rested upon her to show that he had disappeared from his last domicile in Mexico for seven years, and she had not met that burden. In other words, "Mexico was the place from which it was necessary to show that he had been absent for seven years without anything being heard from him, and not Texas, which he had forsaken." (Tex. Civ. App.) 32 S.W.(2d) 880, 881.

Upon the second trial the court submitted three issues to the jury, viz.:

1. Did the insured, Anacleto G. Garcia, leave San Antonio and go to Mexico, on or about the 6th day of May, 1922, with the intention and for the purpose of establishing a home there? Answered, "No," by the jury.

2. Did the insured, Anacleto G. Garcia, establish his home in Torreon, Mexico? Answered, "No," by the jury.

3. What sum of money, if paid now, would be and constitute a reasonable attorney's fee for the services rendered by plaintiff's counsel in this case? The jury answered, $375.

Judgment was accordingly rendered for plaintiff in the sum of $500, amount of the policy sued on, plus $60 as penalty for its nonpayment, plus $375 attorney's fees, making a total of $935 with legal interest thereon and costs of court.

This is the judgment we are now concerned with, and which was reversed by the Court of Civil Appeals and judgment there rendered in favor of the company and against Mrs. Garcia. 46 S.W.(2d) 1011.

A conflict is claimed between the decision of the Court of Civil Appeals here and that of another such court in Latham v. Tombs, 32 Tex. Civ. App. 270, 73 S. W. 1060, and in Gorham v. Settegast, 44 Tex. Civ. App. 254, 98 S. W. 665, 668.

We shall now review those cases and determine if the rulings in question were based so far upon the same state of facts that the decision of the one case is necessarily conclusive of the decision in the others, and upon a question of law such that one decision would overrule the others if rendered by the same court.

The statute reads, "any person absenting himself for seven years successively shall be presumed to be dead, unless proof be made that he was alive within that time." Article 5541, Rev. St. 1925.

We quote from the statute previously in force because the cases alleged in conflict were decided thereunder and before Rev. Stat. 1925 became effective, viz.: "Any person absenting himself beyond. sea or elsewhere for seven years successively shall be presumed to be dead, in any cause wherein his death may come in question, unless proof be made that he was alive within that time." Article 5707, Rev. St. 1911, art. 3372, Rev. St. 1895.

■ The holding of the Court of Civil Appeals in the present case is that no period of seven years' continuous absence from the time when Garcia was last heard from in Torreon was shown, also that the evidence failed to show that he was absent from Torreon for any length of time without being heard from, and the presumption is that he is still living in Torreon, also that there are indications in the record that this suit was filed before the expiration of seven years from his departure from San Antonio, and it is certain that it was filed in less than seven years from the time when he was last heard from in Torreon. The court held that it was not necessary that he establish a home in Torreon in order to fix the period of absence from there—in effect the court held that Garcia was shown to be alive in Torreon within the seven years period. A further finding is "the uncontroverted evidence showed that Garcia had been heard from, and so far as is shown, is in Mexico up to the present time."

In Latham v. Tombs, 32 Tex. Civ. App. 270, 73 S. W. 1060, decided in 1903 under the previous act, the facts, as we gather from the opinion, were that one Luther Pitts was taken by his father from Tennessee to Alabama and left with a grandmother in the latter state, the testimony indicating that Alabama became his home. The witness who testified in the case said that she had resided in the state of Tennessee for twenty-two years after Luther Pitts and his father went to Alabama, during which time, in Tennessee, she never

heard a word from either. The court said: "While the statute does not expressly so read, we think it must be construed to mean that the person referred to must absent himself from his home; and proof of change of residence from one state to another, and the party not having been heard of in the former state for a period of seven years, does not make a case within the purview of the statute. In order to bring the case at bar within the statute, it should have been shown that Luther Pitts absented himself for seven years, successively, from his home in Alabama. * * * No evidence was offered tending to show that he ever abandoned that home, and no evidence tending to show his death, except the fact that he was a sickly child when he left Tennessee, and the further fact that his relative Nancy Bailey frequently received letters and heard from the neighborhood from which the child was taken in Tennessee, and never heard from either the child or its father. She does not state that she received letters or any other character of information from Alabama, the home of the child and its father, or that she made any inquiries there or anywhere else to ascertain anything concerning their existence. We think the evidence was insufficient to support the contention urged."

Tested by the rule of law above stated, we think no conflict is shown between that case and the one at bar.

In Gorham v. Settegast, decided in 1906, under the previous act, the evidence tended to show: A Mrs. Elizabeth Noland O'Connor and her son Beckwith Noland having previously resided in Harris county, Tex., died in New Orleans, La., during the yellow fever plague in 1878, and that they lived in New Orleans during the 60's and 70's.

The court said: "The contention of appellants that the death of Mrs. O'Connor and her son, Beckwith, should be presumed from their continued absence for seven years from Houston, where they once resided, they not having been heard of during that period, cannot be sustained. It is true that a presumption of death is raised by the absence of a person from his domicile when unheard of for seven years. Absence, in this connection, means that a person is not at the place of his domicile, and *that his actual residence is unknown.* It is for this reason that his existence is doubtful, and that, after seven years of such absence, his death is presumed. But removal alone is not enough. The further fact that he has disappeared from his domicile, and from the knowledge of those with whom he would naturally communicate, *so that 'his whereabouts have been unknown for seven years or upward, is necessary to raise the presumption."*

The court said further: "But when a person removes from his domicile in one state, to establish a home for himself in another state or country, at a place well known, this is a change of residence, and absence from the last domicile is that upon which the presumption must be built. If alive when last heard from at his last domicile, the presumption is that life continues. Francis v. Francis, 180 Pa. 646, 37 A. 120, 57 Am. St. Rep. 668. Therefore, it being shown that Mrs. O'Connor and her son, Beckwith, having left their residence in Texas for New Orleans and having become domiciled there, their death cannot be presumed from their seven years' absence from Texas, even though it should appear that they were unheard of by their family, or those who knew them in this state, during that period."

In the case at bar, Garcia's whereabouts were traced to Torreon, Mexico, and whether his intention was to locate there permanently is beside the question, under the holding in Gorham v. Settegast.

We perceive no conflict between that case and this.

This case having been tried in the county court, the jurisdiction of the Supreme Court depends upon whether or not the decision therein is in conflict with other decisions cited in the application for the writ. City of Abilene v. McMahan (Tex. Com. App.) 292 S. W. 525; Knodel v. Equitable Life Ins. Co. (Tex. Com. App.) 221 S. W. 941. Having decided that no proper conflict is so shown, the writ of error heretofore granted is dismissed for want of jurisdiction.

Opinion adopted by the Supreme Court.