The BLAND INDEPENDENT
SCHOOL DISTRICT, et
al., Petitioners,

v.

Douglas BLUE and Carolyn
Blue, Respondents.

No. 99–0231.

Supreme Court of Texas.

Argued Jan. 5, 2000.

Decided Dec. 7, 2000.

548

Robert L. Scott, Greenville, James B. Harris, G. Luke Ashley, John A. Mackintosh, Jr., Anna Marple Duboise, Thompson & Knight, Dallas, for petitioners.

Mark Heidenheimer, McKinney, for respondents.

Justice HECHT delivered the opinion of the Court, in which Justice OWEN, Justice BAKER, Justice ABBOTT, Justice O'NEILL, and Justice GONZALES joined.

Two taxpayers sued their school district to prohibit it from paying future installments due on a lease-purchase financing agreement they claim is illegal. The district filed a plea to the jurisdiction, challenging the taxpayers' standing to sue.

The trial court heard evidence on the plea and sustained it in part but overruled it in part. On the district's interlocutory appeal, the court of appeals held that a ruling on a plea to the jurisdiction must be based solely on allegations in the plaintiff's pleadings unless the defendant asserts that those allegations have been fabricated in an attempt to confer jurisdiction where none exists.[1] Based on the pleadings, the court held that the taxpayers have standing to sue.[2] We disagree with both holdings, reverse the court of appeals' judgment, and dismiss the plaintiffs' action against the district for want of jusrisdiction.

## I

In August 1996, the Bland Independent School District contracted for the construction of a new high school using what it describes as a pre-engineered metal building. BISD financed $1,050,000 of the project's total cost of $1,390,000 through a lease-purchase agreement with Citicorp, Inc. that covered the building, finish-out work, and furnishings. The agreement obligated BISD to make semiannual payments of $53,917 to Citicorp from 1997 through 2011. The new school building opened for classes in August 1997, and by the following November BISD had paid the contractor in full using the Citicorp proceeds, state funds, and local tax revenues. To date, BISD has paid Citicorp the installments that have become due under their agreement.

In March 1998, Douglas and Carolyn Blue brought suit as BISD taxpayers to enjoin BISD from making future payments to Citicorp. The Blues allege that the lease-purchase agreement is illegal because BISD entered into it without complying with two provisions of the Public Property Finance Act.[3] Specifically, the Blues allege that BISD failed to give 60

---

1. 989 S.W.2d 441, 447 (Tex.App.—Dallas 1999).

2. *Id.*

3. Tex.Loc. Gov't Code §§ 271.001–.009.

days' public notice of its intention to enter into an agreement with Citicorp [4] and did not submit the agreement to the attorney general to review its validity.[5] BISD does not dispute that it did not comply with the Act but contends that it was not required to do so because the lease-purchase agreement is not one "for the use or purchase or other acquisition of real property or an improvement to real property" to which the Act applies.[6] Rather, BISD argues, its agreement with Citicorp covers only personal property (furnishings and the like) and a transportable building. The Act excludes transportable buildings from its definition of "improvement".[7]

BISD filed a plea to the jurisdiction, asserting that the Blues had no standing to sue and therefore the trial court lacked subject-matter jurisdiction over the action. BISD argued that the Blues had not suffered any injury separate and apart from the general public that would give them standing to sue. The Blues conceded that they could not show any particularized injury to themselves, but they contended that such injury was unnecessary in a suit to enjoin a governmental entity from making future payments under an illegal contract. BISD acknowledged that such suits are an exception to the particularized-injury rule, but it argued that the Blues' action does not fall within the exception because the transaction they challenge has been completed and all that remains is repayment of Citicorp's loan. BISD also argued

that it used only state funds to repay Citicorp, and that the Blues had no standing as district taxpayers to challenge the expenditure of state funds. (The record does not reflect why the Blues did not attempt to assert standing as state taxpayers.)

At BISD's request, the district court conducted an evidentiary hearing on the plea to the jurisdiction, at which BISD's superintendent described the nature of the project and testified that BISD has used only state funds to repay Citicorp. The Blues did not cross-examine BISD's witness or offer evidence of their own, contending instead that the court could not consider BISD's evidence in ruling on the plea to the jurisdiction but was required to rule on the plea based solely on the Blues' pleadings. The district court appears to have agreed with the Blues on this issue. It sustained BISD's plea in part and overruled it in part, holding that the Blues had standing to challenge the Citicorp agreement but only insofar as it provided financing for the building itself and work done on it, which might arguably be improvements to real property within the meaning of the statute, and not as to financing for furnishings in the building that were clearly personal property. Thus, the court based its ruling on the agreement itself as described in the pleadings, rather than on BISD's evidence showing the status of the project and the source of funds used to repay Citicorp.

4. *See id.* § 271.004(a) ("The board of trustees of a school district may execute, perform, and make payments under a contract under this Act for the use or purchase or other acquisition of real property or an improvement to real property. If the board proposes to enter into such a contract, the board shall publish notice of intent to enter into the contract not less than 60 days before the date set to approve execution of the contract in a newspaper with general circulation in the district. The notice must summarize the major provisions of the proposed contract. The notice shall estimate the construction and other costs, but the board shall not publish the first advertisement for bids for construction of improvements until 60 days has expired from

the publication of the notice of intent to enter into the contract.").

5. *See id.* § 271.004(g) ("A lease-purchase contract entered into by the district under this section and the records relating to its execution must be submitted to the attorney general for examination as to their validity.").

6. *Id.* § 271.004(a).

7. *Id.* § 271.003(10) (" 'Improvement' means a permanent building, structure, fixture, or fence that is erected on or affixed to land but does not include a transportable building or structure whether or not it is affixed to land.").

Only BISD appealed.[8] The court of appeals held that the trial court was not permitted to look past the Blues' pleadings in ruling on BISD's plea to the jurisdiction.[9] The court observed that the Blues had alleged that they were district taxpayers, that the Citicorp lease-purchase agreement was illegal, and that BISD had not made all the payments due under that agreement.[10] The court held that these assertions, if true, were sufficient to give the Blues standing to sue.[11] Since BISD did not contend that the Blues fabricated these allegations to create standing, the court concluded that the trial court had properly overruled BISD's plea to the jurisdiction.[12]

We granted BISD's petition for review.[13]

## II

Our jurisdiction does not extend to an interlocutory appeal like this unless there was a dissent in the court of appeals—and here there was not—or unless the court of appeals' holding conflicts with that of another court of appeals or this Court.[14] We must therefore determine at the outset whether such a conflict exists. We have previously established that "[f]or this Court to have jurisdiction on the ground of conflict it must appear that the rulings in the two cases are 'so far upon the same facts that the decision of one case is necessarily conclusive of the decision in the other.'"[15] "The conflict must be on the very questions of law actually involved and determined, in respect of an issue in both cases, the test being whether one would operate to overrule the other in case they were both rendered by the same court."[16] It is also "essential that such conflict appear on the face of the opinions themselves".[17]

As we have just explained, the court of appeals held that a plea to the jurisdiction must be decided solely on the basis of the plaintiffs' pleadings and not on evidence, absent an assertion that an allegation in the pleadings is false and made only to confer jurisdiction that would otherwise not exist.[18] In reaching this conclusion, the court of appeals noted its disagreement with contrary statements by other courts of appeals as follows:

> We acknowledge some of our sister courts of appeals have indicated, without specifically holding, that evidence may be considered when deciding a plea to the jurisdiction. However, to the extent these cases stand for this proposition, we decline to follow them.[19]

The court of appeals cited four cases, none of which, we agree, actually holds that evidence may be considered in deciding a plea to the jurisdiction. In one, *Dolenz v. Texas State Board of Medical Examiners,*

---

8. Tex.Civ.Prac. & Rem.Code § 51.014(a)(8) ("A person may appeal from an interlocutory order of a district court ... that ... grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001.").

9. 989 S.W.2d at 447.

10. *Id.* at 448.

11. *Id.*

12. *Id.*

13. 42 Tex.Sup.Ct.J. 40 (Oct. 21, 1999).

14. Tex.Gov't Code § 22.225.

15. *Gonzalez v. Avalos,* 907 S.W.2d 443, 444 (Tex.1995) (quoting *Christy v. Williams,* 156 Tex. 555, 298 S.W.2d 565, 567 (1957)); *ac-*

cord, *Coastal Corp. v. Garza,* 979 S.W.2d 318, 319 (Tex.1998).

16. *Christy,* 298 S.W.2d at 568–569.

17. *State v. Wynn,* 157 Tex. 200, 301 S.W.2d 76, 79 (1957); *accord, John Farrell Lumber Co. v. Wood,* 400 S.W.2d 307, 309 (Tex.1966); *Torrez v. Maryland Cas. Co.,* 363 S.W.2d 235, 236 (Tex.1962); *Employers Cas. Co. v. National Bank of Commerce,* 140 Tex. 113, 166 S.W.2d 691, 693 (1942); *Dockum v. Mercury Ins. Co.,* 134 Tex. 437, 135 S.W.2d 700, 701 (1940).

18. 989 S.W.2d at 447.

19. *Id.* (footnote omitted).

the court observed that "[a] plea to the jurisdiction can ... challenge the accuracy or truth of jurisdictional facts pleaded by the plaintiff, in which case evidence of such facts must be presented."[20] The court added, however, that no such challenge had been made in the case.[21] In the second case, *Rodriguez v. American General Fire & Casualty Co.*, the court concluded that the pleadings as well as the extrinsic evidence offered in support of a plea to the jurisdiction showed that jurisdiction was lacking.[22] In the third, *Harkness v. Harkness*, lack of jurisdiction was demonstrated by the plaintiff's responses to requests for admissions and answers to interrogatories, but it is not clear whether the plaintiff's pleadings would have required the same result.[23] In the fourth case, *Laurito v. McVey*, the court merely noted that the plea to the jurisdiction had referred to extrinsic evidence that was not in the record and concluded that jurisdiction was shown by the pleadings.[24] None of these cases so conflicts with the court of appeals' opinion in the present case as to invoke this Court's jurisdiction.

BISD has cited another case in conflict with the decision in the present case: *Law Offices of Yarborough & Pope, Inc. v. National Automobile & Casualty Insurance Co.*[25] There, the court of civil appeals assumed that evidence offered by the defendant showed a lack of jurisdiction because no record of the hearing was presented on appeal; the court did not consider whether the pleadings also showed a lack of jurisdiction.[26] We are also aware of two other intermediate court decisions that suggest that a plea to the jurisdiction need not be based solely on the pleadings. In one, *St. Paul Fire & Marine Insurance Co. v. Meador*, the court concluded that extrinsic evidence was properly considered but did not show a lack of jurisdiction.[27] In the other, *Hernandez v. Texas Department of Insurance*, the court held that a request for findings following an evidentiary hearing on a plea to the jurisdiction extended the time for perfecting appeal, but the court does not appear to have considered the evidence in concluding that the plea was correctly sustained.[28] Finally, in *Speer v. Stover*, we held that the trial court had correctly dismissed the case for want of jurisdiction after hearing evidence offered on a plea in abatement, concluding that the plea could be treated as a plea to the jurisdiction.[29] But we did not indicate whether the case could have been dismissed on the pleadings alone. Thus, in none of these cases was the propriety of extrinsic evidence essential to the result.

■ BISD argues that the court of appeals' opinion conflicts with our decision in *F/R Cattle Co. v. State*.[30] The court of appeals attempted to distinguish *F/R Cattle Co.*, but BISD argues that the attempt was unsuccessful. We agree.

The court of appeals correctly recited the circumstances presented in *F/R Cattle Co.* There, the State sued under the Texas Clean Air Act to enjoin the emission of odors from a large commercial calf-raising

20. 899 S.W.2d 809, 811 n. 3 (Tex.App.—Austin 1995, no writ).

21. *Id.*

22. 788 S.W.2d 583, 585–586 (Tex.App.—El Paso 1990, writ denied).

23. 709 S.W.2d 376, 378 (Tex.App.—Beaumont 1986, writ dism'd).

24. 496 S.W.2d 656, 659 (Tex.Civ.App.—Austin 1973, no writ).

25. 548 S.W.2d 462, 463–464 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.).

26. *Id.*

27. 990 S.W.2d 362, 365–366 (Tex.App.—Fort Worth 1999, no pet.).

28. 923 S.W.2d 192, 194–195 (Tex.App.—Austin 1996, no writ).

29. 685 S.W.2d 22 (Tex.1985) (per curiam).

30. 866 S.W.2d 200 (Tex.1993).

operation.[31] The defendant filed a plea to the jurisdiction, arguing that the Act did not afford jurisdiction for the State's suit because the odors complained of were produced by natural processes and the Act expressly did not apply to such odors.[32] The trial court sustained the plea after hearing evidence and making findings.[33] The court of appeals reversed, holding that as a matter of law the odors from the calf-raising operation were not produced by natural processes.[34] We concluded that the issue could not be determined as a matter of law. We reversed and remanded the case to the court of appeals to determine whether the evidence was factually sufficient to support the trial court's ruling.[35]

In the case before us, the court of appeals correctly observed that the State in *F/R Cattle Co.* did not object to the consideration of evidence, but the court erred in concluding that we merely "addressed the appeal in the procedural posture in which it was presented." [36] If the jurisdictional issue should have been governed solely by the State's pleadings, we would have been obliged to decide the issue. If the pleadings showed jurisdiction, we would have affirmed the court of appeals, and if they did not, we would have dismissed the case. If evidence could not be considered in deciding the jurisdictional issue, we would no more have remanded the case to the court of appeals to assess the factual sufficiency of the evidence merely because the State did not object than we would remand a summary judgment for a factual sufficiency review merely because no one objected. Although we did not discuss in *F/R Cattle Co.* whether evidence could be considered in deciding a plea to the jurisdiction, the propriety of such evidence was

essential to our ruling on the face of the opinion. Our judgment would have been different if consideration of such evidence had been improper. The State could not, simply by waiving an objection to the consideration of evidence, require the courts to take such evidence into account if such evidence were impermissible.

■■■ The conflict between the court of appeals' holding in the present case and our decision in *F/R Cattle Co.*, is such that if the court of appeals were correct, then *F/R Cattle Co.* was wrongly decided. While the factual circumstances presented in the two cases are very different, factual similarity is not a prerequisite for our jurisdiction over an interlocutory appeal if the factual differences do not serve to legitimately distinguish the holdings of the two cases.[37] If the rule stated by the court of appeals in this case were correct, then *F/R Cattle Co.* should have been decided differently. If a rule of decision in one case would require a different result were it applied in another case, the conflict between the two cases is sufficient to invoke our jurisdiction over an interlocutory appeal.

### III

We next consider *when* evidence can be considered in deciding a plea to the jurisdiction, and whether the trial court should have considered BISD's evidence showing the structure of the transaction and the state source of funds to pay Citicorp.

■■■ Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's

---

31. *Id.* at 201.

32. *Id.*

33. *Id.* at 201–202.

34. *State v. F/R Cattle Co.,* 828 S.W.2d 303, 306–307 (Tex.App.—Eastland 1992), *rev'd,* 866 S.W.2d 200 (Tex.1993).

35. 866 S.W.2d at 205.

36. 989 S.W.2d at 447.

37. *Coastal Corp. v. Garza,* 979 S.W.2d 318, 320 (Tex.1998).

power to decide a case.[38] The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction,[39] as well as by other procedural vehicles, such as a motion for summary judgment.[40] BISD has raised its challenge by a plea to the jurisdiction.

■ A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit.[41] The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case.[42] The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached. This does not mean that evidence cannot be offered on a dilatory plea; on the contrary, the issues raised by a dilatory plea are often such that they cannot be resolved without hearing evidence.[43] And because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case. But the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction. Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion.

■ Thus, for example, when a defendant asserts that the amount in controversy is below the court's jurisdictional limit, the plaintiff's pleadings are determinative unless the defendant specifically alleges that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction,[44] or the defendant can readily establish that the amount in controversy is insufficient, as for example when the issue in dispute is a license or right rather than damages.[45] A plea to the jurisdiction cannot be used to require the plaintiff to prove the damages to which he is entitled in order to show that they exceed the court's jurisdictional limits. The plaintiff's allegation of damages in excess of jurisdictional limits suffices to show the amount in controversy, even if damages cannot ultimately be proved at all. Were it otherwise, the plaintiff would be required to try his entire case to show an entitlement to damages in excess of the court's jurisdictional limits.

On the other hand, there are situations in which a plaintiff is required to prove facts that might be characterized as "primarily jurisdictional". For example, when a defendant asserts that a plaintiff organization does not have standing to assert claims on behalf of its members, an evidentiary inquiry into the nature and purpose of the organization sufficient to determine standing does not involve a significant inquiry into the substance of the claims.[46] Rather, a determination of asso-

**38.** *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993).

**39.** *Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 637 (Tex.1999) (per curiam).

**40.** *See, e.g., NME Hospitals, Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex.1999).

**41.** *See* 5 William V. Dorsaneo III, Texas Litigation Guide § 70.03[1] (2000).

**42.** *See Jud v. City of San Antonio,* 143 Tex. 303, 184 S.W.2d 821, 823 (1945).

**43.** *See* 5 Dorsaneo, *supra* note 41, § 70.03[1].

**44.** *Hoffman v. Cleburne Bldg. & Loan Ass'n,* 85 Tex. 409, 22 S.W. 154, 155 (1893).

**45.** *Cf. Tune v. Texas Dept. of Public Safety,* 23 S.W.3d 358 (Tex.2000) (holding as a matter of law that the amount in controversy in a case involving the denial of a license to carry a concealed handgun exceeds $100).

**46.** *Cf. Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440 (Tex.1993) (setting out requirements for associational standing and illustrating how determination of those requirements may be made apart from the merits of the case).

ciational standing is a prerequisite to the plaintiff's presentation of its substantive claims. Similarly, a challenge to personal jurisdiction by special appearance, which is a dilatory plea, almost always requires consideration of evidence, and the rules of procedure set out the process for adducing such evidence.[47] While that evidence may touch on the merits of the case, it focuses on the defendant's contacts with the forum, not whether the defendant may be liable as alleged.

The court of appeals cited *Firemen's Insurance Co. v. Board of Regents*[48] as authority for its conclusion that a plea to the jurisdiction must ordinarily be decided solely on the pleadings.[49] *Firemen's*, in turn, relied on our decision in *Brannon v. Pacific Employers Insurance Co.*[50] But the jurisdictional challenge in *Brannon* was based on the amount in controversy, an issue which, as we have explained, must ordinarily be decided solely on the pleadings. The court in *Firemen's* cited this limitation in the context of determining a plea to the jurisdiction based on sovereign immunity. To this extent we disapprove the language of *Firemen's*.

 In sum, a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. The court should, of course, confine itself to the evidence relevant to the jurisdictional issue. The evidence BISD offered here showed the basic nature of the finance arrangement for construction of the school building and the source of funds used to repay Citicorp. This evidence went not to the merits of the Blues' claims—whether the Public Property Finance Act was vio-

lated—but only to whether the Blues had standing to assert their claims. Accordingly, the trial court should have considered BISD's evidence in deciding its plea to the jurisdiction, and apparently did so.

 In reliance on the trial court's decision not to consider extrinsic evidence, the Blues offered none of their own and did not cross-examine BISD's witness. They now argue that if such evidence is to be considered, they should be given an opportunity on remand to have a full evidentiary hearing. If the Blues' standing were dependent on the source of the funds BISD uses to repay Citicorp, we would agree, since the Blues dispute the evidence BISD offered and argue that it is not conclusive. But the Blues do not dispute BISD's evidence that construction of the school building is complete, that the building is occupied, and that neither the contractor nor Citicorp owe BISD any further performance under their respective agreements. Accordingly, we consider whether this undisputed evidence concerning the status of the project defeats the Blues' claim of standing.

 In general, taxpayers do not have a right to bring suit to contest government decision-making because, as we observed more than half a century ago in *Osborne v. Keith*, "[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review."[51] Unless standing is conferred by statute,[52] taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered

---

**47.** Tex.R.Civ.P. 120a.

**48.** 909 S.W.2d 540, 541 (Tex.App.—Austin 1995, writ denied).

**49.** 989 S.W.2d at 446.

**50.** 909 S.W.2d at 541 (citing *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (1949)).

**51.** 142 Tex. 262, 177 S.W.2d 198, 200 (1944).

**52.** *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984); *Scott v. Board of Adjustment*, 405 S.W.2d 55 (Tex.1966).

by the general public in order to have standing to challenge a government action or assert a public right.[53] But in Texas law there is a long-established exception to this general rule: a taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury.[54] We have explained the justification for this broader grant of standing to challenge future expenditures as follows:

> When a taxpayer brings an action to restrain the illegal expenditure ... of tax money he sues for himself, and it is held that his interest in the subject-matter is sufficient to support the action; but when the money has already been spent, an action for its recovery is for the [taxing entity]. The cause of action belongs to it alone.[55]

The exception unquestionably impinges on the policies for restricting taxpayer lawsuits, but strictly limited, it provides important protection to the public from the illegal expenditure of public funds without hampering too severely the workings of the government.

BISD argues that this Court abolished the exception in *Hunt v. Bass,* where we wrote that the general rule "is applied in all cases absent a statutory exception to the contrary." [56] But *Hunt* did not involve an alleged illegal expenditure; rather, the plaintiffs there claimed that their lawsuits were being delayed because of the commissioners' court's failure to appropriate sufficient funds to operate the local courts. We had no reason in that case to refer to the law governing illegal expenditures, and the sentence to which BISD points cannot fairly be read to tacitly overrule the cases

that had permitted taxpayer suits challenging such expenditures.

The Blues argue that their claim fits within the exception: they are taxpayers suing to enjoin future payments to Citicorp under its finance agreement with BISD. BISD argues that the financing arrangement must be viewed as only a part of the construction project, which has long since been completed. Because all the work has been done and BISD's obligation to pay for it has been fully incurred, BISD argues that the Blues' challenge is really to past expenditures, even though payments are due in future installments. In essence, BISD's argument is that taxpayer suits to enjoin future payments under an illegal contract should be restricted to instances in which the governmental entity has not yet received full performance under the contract. Here, construction of the BISD high school is complete, and the building is occupied. Citicorp has performed its obligations to BISD under their agreement, and it remains for BISD to repay the loan.

We have never extended the exception far enough to include the Blues' action against BISD. In *City of Austin v. McCall,* a taxpayer obtained an injunction prohibiting the City of Austin from consummating a proposed contract to purchase a water and power utility.[57] In affirming the injunction, we said that " 'it would seem eminently proper for courts of equity to interfere upon the application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders.' " [58] In *Hoffman v. Davis,*

**53.** *Pierce v. Southern Pac. Co.,* 410 S.W.2d 801, 802 (Tex.Civ.App.—Waco 1967, writ ref'd); *San Antonio Conservation Soc. v. City of San Antonio,* 250 S.W.2d 259, 263 (Tex.Civ. App.—Austin 1952, writ ref'd); *Yett v. Cook,* 115 Tex. 205, 281 S.W. 837, 840 (1926); *City of San Antonio v. Stumburg,* 70 Tex. 366, 7 S.W. 754, 755 (1888).

**54.** *Osborne,* 177 S.W.2d at 200; *Hoffman v. Davis,* 128 Tex. 503, 100 S.W.2d 94, 95

(1937); *City of Austin v. McCall,* 95 Tex. 565, 68 S.W. 791, 793 (1902).

**55.** *Hoffman,* 100 S.W.2d at 96.

**56.** *Hunt,* 664 S.W.2d at 324.

**57.** 68 S.W. at 792.

**58.** *Id.* at 794 (quoting *Crampton v. Zabriskie,* 101 U.S. 601, 609, 25 L.Ed. 1070 (1879)).

taxpayers sued the sureties on county officials' bonds for payment on the bonds due to the officials' misconduct.[59] Although we reaffirmed "[t]he right of a taxpaying citizen to go into a court of equity and enjoin public officials from the expenditure of public funds under an illegal contract",[60] we concluded that the action did not fit within this rule but was rather a suit for debt which properly belonged to the county. In *Osborne v. Keith*, a taxpayer sued to enjoin the county from paying for dirt it had purchased from its agent to be used in road construction.[61] It appears that the county had already taken and used some materials and may have had the right to take more.[62] We held that the county's agreement with its fiduciary to purchase such materials was not illegal but merely voidable.[63] Hence, we did not consider whether it was important that the county had already taken possession of some of the dirt it had purchased. Finally, in *Hulett v. West Lamar Rural High School District*,[64] taxpayers sued to enjoin their school district from constructing school buildings out of wood when the bonds authorized for financing of the construction called for buildings "of material other than wood".[65] The district court denied the plaintiffs' request for a temporary injunction, and the court of appeals dismissed the appeal as moot because construction was "90 to 95 per cent complete".[66] We agreed to hear the appeal because "substantial sums remained to be paid under the contract and therefore ... the question involved was not moot."[67] At oral argument, however, respondent showed "that the contract had been fully performed, that the buildings had been accepted by the school authorities, and that the contract price had been fully paid by the school district to the contractor."[68] We therefore concluded that the case was moot.[69] Although *Hulett* did not involve future loan payments as the present case does, our opinion nevertheless suggests that once construction is complete the agreement for it can no longer be challenged in a taxpayer suit.

The Blues rely on a court of civil appeals' opinion, *Kordus v. City of Garland*,[70] but that case is consistent with our own precedents. There, taxpayers sued to recover money donated and dues paid by the City of Garland to the local chamber of commerce, and to prohibit the City from performing its agreement with the chamber to donate more money in the future. The trial court dismissed the case because the plaintiffs had failed to show any interest distinct from the general public's, but the court of appeals concluded that the taxpayers were entitled to sue to prohibit future payments by the City to the chamber. Although the City had already agreed to make $40,000 in future payments, the chamber had not yet rendered any service for such payments, and therefore the agreement remained, in that important respect, executory. In the present case, by contrast, nothing remains to be performed of the agreements for construction of BISD's high school but repayment of funds already advanced for work fully completed.

We are not inclined to extend the exception to taxpayer standing to include the Blues' suit. The jurisprudential justifica-

59. 100 S.W.2d at 94.

60. *Id.* at 95.

61. 177 S.W.2d at 199.

62. *Id.*

63. *Id.* at 201.

64. 149 Tex. 289, 232 S.W.2d 669 (1950).

65. *Id.* at 669.

66. *Id.*

67. *Id.* at 670.

68. *Id.*

69. *Id.*

70. 561 S.W.2d 260 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

tion for taxpayer suits to enjoin performance of illegal agreements is that the interference such suits pose to government activities is slight in comparison to the protection afforded taxpayers from preventing the culmination of illegal agreements made by public officials. But the balance in costs and benefits shifts significantly once the governmental entity has received all that it bargained for and must simply pay for it. We need not decide here whether a governmental entity's receipt of something less than full performance under an allegedly illegal agreement is enough to preclude a taxpayer suit to prohibit future performance. When all that remains is a school district's repayment of a loan for work completed, allowance of a taxpayer action to prohibit such repayment threatens a substantial interference with governmental actions. The Blues' action not only threatens BISD's already substantial investment in its high school, and what by now are the settled expectations of other taxpayers in the district who are also served by the high school, but should the action succeed on the merits, it would signal increased risks to lenders and others in dealing with governmental entities. The potential for disruption of government operations is too great to allow a taxpayer with no special injury distinct from the general public's to sue to prohibit the government from paying for goods and services it has already received and placed in permanent use.

For these reasons we conclude that the Blues lack standing to sue and therefore that the trial court lacked subject matter jurisdiction over the action.

\* \* \* \* \*

Accordingly, the judgment of the court of appeals is reversed and the Blues' action is dismissed for want of jurisdiction.

Chief Justice PHILLIPS filed a dissenting opinion, in which Justice ENOCH and Justice HANKINSON joined.

PHILLIPS, Chief Justice, dissenting, in which Justice ENOCH and Justice HANKINSON join.

Our jurisdiction to consider this interlocutory appeal depends on the existence of a conflict between the court of appeals' opinion below and some prior decision from another court of appeals or this Court. TEX.GOV'T CODE § 22.225. Such a conflict must be well-defined "upon a question of law involved and determined and such that one decision would overrule the other if both were rendered by the same court." *Garcia v. American Nat'l Ins. Co.*, 124 Tex. 466, 78 S.W.2d 170, 170 (1935); *see also Christy v. Williams*, 156 Tex. 555, 298 S.W.2d 565, 567 (1957) (rulings in the two cases must be so far upon the same state of facts that decision in one is necessarily conclusive in the other). Because the Court mistakenly concludes that the decision of the court below conflicts with our opinion in *F/R Cattle Company, Inc. v. State*, 866 S.W.2d 200 (Tex.1993), I respectfully dissent.

The court of appeals in this case holds that the trial court should determine its subject matter jurisdiction solely from the allegations in the plaintiffs' pleadings. The Blues' took this position in the trial court, and they objected when BISD attempted to use extrinsic evidence to show that the trial court lacked subject matter jurisdiction. In contrast, the plaintiff in *F/R Cattle* did not object when the defendant used extrinsic evidence to contest the plaintiff's allegations of subject matter jurisdiction. The court of appeals distinguished *F/R Cattle* on this basis, noting that we decided the case only "in the procedural posture in which it was presented." 989 S.W.2d 441, 447. Because no one objected to the extrinsic evidence, we never considered whether it was proper or not. But this distinction does not necessarily foreclose conflicts jurisdiction. We recently explained that the conflicts standard does not require factual identity between the two opinions, so that factual distinctions that are immaterial to the respective

holdings may be ignored. *See Coastal Corp. v. Garza,* 979 S.W.2d 318, 320 (Tex. 1998).

The Court apparently considers the plaintiff State's failure to object to extrinsic evidence in *F/R Cattle* to be an immaterial factual distinction, irrelevant to the deciding legal pronouncements. In part, the Court reaches this conclusion by explaining that "[t]he State could not, simply by waiving an objection to the consideration of evidence, require the courts to take such evidence into account if such evidence were impermissible." 34 S.W.3d at 553. But the failure to object to "impermissible" evidence can have just that effect. For example, if the State failed to object to impermissible, hearsay testimony would we not "take such evidence into account"? Our rules say that we would. *See* TEX.R.EVID. 802. In a summary judgment appeal, on the other hand, we do not consider oral testimony on appeal, even if admitted without objection, because our summary judgment rule expressly forbids its use. TEX.R.CIV.P. 166a(c) ("No oral testimony shall be received at the hearing."); *see also Richards v. Allen,* 402 S.W.2d 158, 161 (Tex.1966) (supplementation of summary judgment evidence should be by affidavit or deposition rather than oral testimony). I am not sure which situation is closer to this case, but I would prefer some analysis to decision by fiat.

The Court also suggests today that *F/R Cattle* conflicts because "our judgment would have been different if consideration of such evidence had been improper." 34 S.W.3d at 553. Even if this were true, a judgment alone cannot create a conflict with another opinion or another judgment. We have never gone behind the opinions to determine whether a conflict exists; instead we have considered only the facts and law actually set out in the respective opinions. *See Boxwell v. Ladehoff,* 400 S.W.2d 303, 304 (Tex.1966); *Employers Cas. Co. v. National Bank of Commerce,* 140 Tex. 113, 166 S.W.2d 691, 693 (1942); *Dockum v. Mercury Ins. Co.,* 134 Tex. 437,

135 S.W.2d 700, 701 (1940). The Court here concedes that "we did not discuss in *F/R Cattle Co.* whether evidence could be considered in deciding a plea to the jurisdiction". 34 S.W.3d at 553. If we did not discuss this in *F/R,* how can there be a conflict apparent on the face of the two opinions? *See John Farrell Lumber Co. v. Wood,* 400 S.W.2d 307, 309 (Tex.1966); *Torrez v. Maryland Cas. Co.,* 363 S.W.2d 235, 236 (Tex.1962); *State v. Wynn,* 301 S.W.2d at 76, 79 (Tex.1957).

Whether or not we agree with the court of appeals' limited evidentiary view, its opinion does not necessarily conflict with *F/R Cattle,* and therefore we lack jurisdiction to consider the issue. I realize that it is difficult to resist "the desire to remedy significant errors" arising in interlocutory appeals. *Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425, 441 (Tex.2000)(Enoch, J. dissenting). But as a Court of limited appellate jurisdiction, we must wait until issues are properly before us before we address them by judicial decision.

Because we do not have general appellate jurisdiction over interlocutory appeals of this nature and because any alternative basis for our jurisdiction has not been demonstrated, I would dismiss the petition for want of jurisdiction. For these reasons, I dissent.