

# NUMBER 13-23-00098-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| YOLANDA HERNANDEZ DELGADO, | Appellant, |
| v. | |
| CAMERON COUNTY, | Appellee. |

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION ON REHEARING

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion on Rehearing by Justice Longoria**

We handed down our opinion and judgment in this matter on July 18, 2024. Appellant Yolanda Hernandez Delgado has filed a motion for rehearing and a motion for reconsideration en banc. Appellee Cameron County (the County) filed a response. After examining and fully considering the issues raised in Hernandez's motions and the County's response, we grant Hernandez's motion for rehearing, withdraw our prior

opinion and judgment, and issue this opinion and judgment in their stead.[1]

Hernandez sued the County after she was involved in a motor-vehicle collision with County employee Gerardo Gonzalez, a deputy with the Cameron County Sheriff's Office. The County filed a plea to the jurisdiction on the basis of governmental immunity, and the trial court granted the plea. In one issue, Hernandez argues the trial court erred in granting the plea to the jurisdiction because there are fact issues concerning the applicability of the emergency-response exception to the Texas Tort Claims Act (TTCA) waiver of governmental immunity. We reverse and remand.

## I.    BACKGROUND

On February 17, 2021, Deputy Gonzalez filed his original petition against Hernandez alleging negligence in the operation of her vehicle, faulting her for the collision that occurred on March 1, 2020. Subsequently, on March 4, 2021, Hernandez filed a separate suit against the County asserting that Deputy Gonzalez caused the accident, and that the County was vicariously liable for his negligence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1).

After the cases were consolidated, the County answered suit and filed a plea to the jurisdiction. In its plea, the County argued that its immunity from suit was not waived under the TTCA, and, therefore, the trial court lacked subject matter jurisdiction over Hernandez's claims. Specifically, the County argued that the "emergency-response exception" to the statutory waiver of immunity applied in this case because Deputy

---

[1] Because we are granting Hernandez's motion for rehearing, we dismiss Hernandez's motion for reconsideration en banc as moot.

2

Gonzalez was responding to an emergency call or in an emergency situation at the time of the accident. *See id.* § 101.055(2). The County supported its plea with the deposition testimonies of Hernandez and Deputy Gonzalez; the official crash report from the Los Fresnos Police Department (LFPD); written statements from Deputy Constable Richard Marquez; video footage of the scene from a convenience store across the street obtained by an LFPD officer; Hernandez's Department of Public Safety records; and body camera footage from an LFPD investigator taken after the accident.

Hernandez filed a response to the County's plea, arguing that the evidence raised a fact issue as to whether Deputy Gonzalez knowingly entered a busy intersection at a high rate of speed while disregarding a red light and without the use of his siren, thereby causing the collision. Hernandez attached her own deposition, Deputy Gonzalez's deposition, a transcribed conversation between an insurance company representative and Deputy Gonzalez related to the incident, the Texas Peace Officer's Crash Report, and a video exhibit depicting the accident taken from a nearby surveillance camera.

According to the evidence attached to the County's plea and Hernandez's reply, on March 1, 2020, Deputy Gonzalez was responding to an emergency call for a burglary in progress. While en route to the incident, Deputy Gonzalez drove eastbound in his patrol unit toward the intersection. Deputy Constable Marquez was following Deputy Gonzalez in his own patrol unit in response to the same emergency call. Hernandez alleged in her petition that as she approached the intersection, the traffic light facing her was green and she proceeded into the intersection at the speed limit before she struck Deputy Gonzalez's patrol vehicle. In the body camera footage from the investigating officer at the

3

scene of the incident, Hernandez stated that she could not remember if Deputy Gonzalez's lights and siren were on. She said the patrol vehicle following Deputy Gonzalez did have his siren and lights activated. At her deposition, Hernandez said a building in the corner of the intersection possibly obstructed her view, but she did not remember seeing lights and did not hear a siren. Hernandez also testified in her deposition that she was talking on her cell phone at the time of the accident.

Deputy Gonzalez testified at his deposition that he was responding to a burglary in progress call when the accident occurred. He explained that he had his lights and siren activated as he entered the intersection. Deputy Gonzalez's also stated that he slowed down before proceeding through the intersection and as he was attempting to make a left turn, he was struck by Hernandez's vehicle.

Following a hearing on February 15, 2023, the trial court signed an order granting the County's plea to the jurisdiction and dismissing Hernandez's claims with prejudice. This appeal followed.

## II. DISCUSSION

By a single issue, Hernandez contends that there is a genuine issue of material fact as to whether Deputy Gonzalez, in the course of responding to an emergency call, failed to comply with applicable law or acted with conscious indifference or reckless disregard for the safety of others, thus rendering the emergency-response exception inapplicable.

### A. Standard of Review & Applicable Law

A plea to the jurisdiction is a dilatory plea, the purpose of which is "to defeat a

4

cause of action without regard to whether the claims asserted have merit.*" Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* Typically, governmental immunity deprives a trial court of jurisdiction over lawsuits in which the State's political subdivisions have been sued unless immunity is waived by the Legislature. *Id.*; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). Therefore, governmental immunity is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26.

A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction, which encompasses the burden of establishing a waiver of a governmental entity's immunity from suit. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Id.* (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). This is true even when the jurisdictional issue intertwines with the merits of the case. *Id.*

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, the standard of review mirrors that of a summary judgment, meaning that all the evidence is reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists. *Id.* In the face of an evidentiary challenge, the plaintiff has the burden to present sufficient evidence to create a genuine issue of material fact

regarding the jurisdictional issue. *Id.* at 552. If the evidence raises a fact issue regarding

jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. *Miranda*,

133 S.W.3d at 227–28. On the other hand, if the evidence is undisputed or fails to raise

a fact issue, the plea must be determined as a matter of law. *Id.* at 228; *Garcia*, 372

S.W.3d at 635.

The TTCA provides a limited waiver of governmental immunity for:

(1)     property damage, personal injury, and death proximately caused by
        the wrongful act or omission or the negligence of an employee acting
        within his scope of employment if:

        (A)     the property damage, personal injury, or death arises from
                the operation or use of a motor-driven vehicle or motor-driven
                equipment; and

        (B)     the employee would be personally liable to the claimant
                according to Texas law[.]

TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(1),101.025(a) (providing that sovereign

immunity to suit is waived and abolished to the extent of liability created by the TTCA).

Exempted from this waiver of immunity are claims included in the TTCA's "emergency

response exception" that arise:

from the action of an employee while responding to an emergency call or
reacting to an emergency situation if the action is in compliance with the
laws and ordinances applicable to emergency action, or in the absence of
such a law or ordinance, if the action is not taken with conscious indifference
or reckless disregard for the safety of others[.]

*Id.* § 101.055(2). The policy underlying this exception to the TTCA's limited waiver of

immunity is "to balance the safety of the public with the need for prompt responses to

police, fire, and medical emergencies." *City of Amarillo v. Martin*, 971 S.W.2d 426, 429

(Tex. 1998); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 699 (Tex. App.—

6

Austin 2005, no pet.). "Imposing liability for a mere failure in judgment could deter emergency personnel from acting decisively and from taking calculated risks" and would "allow for judicial second guessing of the split-second and time-pressured decisions emergency personnel are forced to make." *Hudson*, 179 S.W.3d at 699.

The law governing the operation of emergency vehicles is found in Chapter 546 of the transportation code. *See* TEX. TRANSP. CODE ANN. ch. 546. An operator of an emergency vehicle may "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation" and may "exceed a maximum speed limit . . . as long as the operator does not endanger life or property." *Id.* § 546.001. These provisions, however, do not relieve a driver of an emergency vehicle from "the duty to operate the vehicle with appropriate regard for the safety of all persons" or "the consequences of reckless disregard for the safety of others." *Id.* § 546.005(1)–(2).

The plaintiff bears the burden to establish that the emergency-response exception does not apply. *Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.). This burden requires Hernandez to present evidence sufficient to raise an issue of fact showing that Deputy Gonzalez (1) was not responding to an emergency call or reacting to an emergency situation; (2) failed to comply with the applicable law regarding emergency action; or (3) acted with conscious indifference or reckless disregard for the safety of others. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2). Because there is no dispute that Deputy Gonzalez was responding to an emergency call, the question thus becomes whether Hernandez has produced sufficient evidence to generate a genuine issue of material fact as to whether Deputy

7

Gonzalez failed to comply with the applicable law regarding emergency action or operated the vehicle with conscious indifference or reckless disregard for the safety of others. As explained by the Texas Supreme Court, "reckless disregard"

> involves more than a "momentary judgment lapse." It requires a "willful or wanton disregard for the safety of persons or property," exhibiting "conscious indifference" while having "subjective awareness of an extreme risk." In other words, to drive with reckless disregard, the driver must commit "an act he knew or should have known posed a high degree of risk of serious injury" to others.

*City of Houston v. Green*, 672 S.W.3d 27, 30 (Tex. 2023) (per curiam) (discussing its holding in *City of San Antonio v. Maspero*, 640 S.W.3d 523, 531 (Tex. 2022)) (internal citations omitted). The Court has further clarified, "[T]o recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury—in other words, that the operator has acted recklessly." *Kolster v. City of El Paso*, 972 S.W.2d 58, 58–59 (Tex. 1998).

## B.    Analysis

Viewing the evidence in the light most favorable to Hernandez, as we must, we note that Hernandez maintains that the evidence supports a factual determination, or at least raises a fact issue, that Deputy Gonzalez caused the collision by disregarding a red light and entering a busy intersection at a high rate of speed, without stopping, slowing down, or activating his siren or lights. Hernandez also asserts there was reason to believe active cross-traffic was oblivious to Deputy Gonzalez's approach. Under this version of events, this evidence would raise a fact issue as to whether Deputy Gonzalez's conduct was negligent under TTCA.

8

It is undisputed that Deputy Gonzalez was responding to an emergency call. Although Deputy Gonzalez entered a busy intersection against a red light, the video footage and the testimony of Deputy Constable Marquez confirms that Deputy Gonzalez activated his brakes when approaching the intersection. Hernandez offered no further evidence other than her own testimony to contradict Deputy Constable Marquez's statement that Deputy Gonzalez slowed down by activating his brakes before entering the intersection. The video footage refutes Hernandez's testimony and conclusively establishes that Deputy Gonzalez activated his brakes. *See City of Dallas v. Hillis*, 308 S.W.3d 526, 535 (Tex. App.—Dallas 2010, pet. denied) (holding that dash camera video footage from officer's patrol unit conclusively refuted plaintiff's claim that the patrol unit caused the accident). However, while the brake lights are visible in the video, the degree to which Deputy Gonzalez slowed his vehicle remains unknown. The video shows Deputy Gonzalez approaching the intersection at what appears to be a high rate of speed, before and after his brakes are applied.

Hernandez also cites to the LFPD's crash report, which stated that Deputy Gonzalez violated § 546.001 of the transportation code by entering the intersection against a red light. However, § 546.001(2) provides that an emergency vehicle operator responding to an emergency call is allowed to proceed against a red traffic light after slowing for safe operation. *See* TEX. TRANSP. CODE ANN. § 546.001(2); *see also City of Laredo v. Varela*, No. 04-10-00619-CV, 2011 WL 1852439, *3–5 (Tex. App.—San Antonio May 11, 2011, no pet.) (mem. op.) (holding that an officer's failure to adhere to policy requiring emergency vehicles to come to complete stop did not raise fact issue as

to whether officer acted with reckless disregard for the safety of others). As noted above, that is exactly what Deputy Gonzalez did. The surveillance video shows the brake lights of Deputy Gonzalez's patrol vehicle were activated as he approached the intersection. Hernandez argues, however, that Deputy Gonzalez did not adequately slow down prior to entering the intersection against the red light. Hernandez cites the surveillance video and the crash report to support her contention that Deputy Gonzalez did not adequately slow down as he entered the intersection. Officer Aaron Adalberto Villarreal, the LFPD officer who investigated the accident and obtained the surveillance footage, faulted Deputy Gonzalez for causing the accident. Based on his review of the surveillance footage, Officer Villarreal stated in the crash report that Deputy Gonzalez was traveling at "a high rate of speed" and "disregarded a red light" at the time of the accident. Having reviewed the surveillance video, we find that a reasonable juror could reach the same conclusion as Officer Villareal. In other words, a reasonable juror could find that, despite applying his brake, Deputy Gonzalez was still traveling at an unacceptably dangerous speed as he entered the intersection.

Also in dispute is whether or not Deputy Gonzalez had his lights and siren activated. The County argues that the video footage from the surveillance camera establishes that the overhead lights of Deputy Gonzalez's vehicle were on prior to entering the intersection. We do not agree with this conclusion. In viewing the video, we are unable to ascertain whether the lights of Deputy Gonzalez's patrol vehicle were activated before entering the intersection or only immediately after the collision. In the video, the lights are visible once the collision occurred, but we cannot say with certainty

that the lights were on prior. There is testimony from Deputy Gonzalez that he activated his lights and siren prior to the incident. His testimony is corroborated by the witness statement provided by Deputy Constable Marquez, who stated that he was following behind Deputy Gonzalez en route to the burglary call and that Deputy Gonzalez "had his emergency red and blue lights and audible siren activated." At the scene, Hernandez stated that the patrol vehicle behind Deputy Gonzalez had his siren on, but she did not recall if the lights or siren from Deputy Gonzalez's vehicle were activated. She reaffirmed this statement at her deposition.

The emergency exception does not apply if the operator of the emergency vehicle acted recklessly by an act or omission the operator knew or should have known posed a high degree of risk of serious injury. *See Martin*, 971 S.W.2d at 430. Thus, if the summary-judgment evidence raises a fact issue as to whether Deputy Gonzalez acted recklessly, then the trial court erred to the extent it granted the Jurisdictional Plea based on the emergency exception. *See Maspero*, 640 S.W.3d at 530–31; *Gomez v. City of Houston*, 587 S.W.3d 891, 902 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). While the surveillance video footage establishes that Deputy Gonzalez applied his brakes as he neared the intersection, which could be seen as an attempt to "minimize potential harm," *see Maspero*, 640 S.W.3d at 532, there is a genuine issue of material fact as to whether the quick application of his brakes slowed Deputy Gonzalez's patrol vehicle down enough to safely clear the intersection. Having reviewed the evidence submitted by the parties, we conclude there is a genuine issue of material fact as to whether Deputy Gonzalez's conduct rises to the level of recklessness. *See id.* at 902–03 (holding there was a fact

issue as to recklessness when officer failed to slow his speed, might not have used his emergency lights and siren, and was unable to stop his patrol car before entering intersection in path of another vehicle); *Perez v. Webb Cnty*, 511 S.W.3d 233, 237–38 (Tex. App.—San Antonio 2015, pet. denied) (holding there was a fact issue as to recklessness when officer started to brake before entering intersection but then accelerated through it even though he had a blind spot in his view of oncoming traffic); *see also City of Missouri City v. Passante*, No. 14-09-00634-CV, 2010 WL 2998777, at *8 (Tex. App.—Houston [14th Dist.] Aug. 3, 2010, no pet.) (mem. op.) (affirming trial court's denial of plea to jurisdiction because there were fact issues as to whether police officer was reckless, including whether officer (1) was using his emergency lights and siren and (2) could see cross-traffic at intersection).

In this case, Deputy Gonzalez was aware that proceeding through the intersection against the red light could pose a high degree of risk or injury. *See Martin*, 971 S.W.2d at 430. Deputy Gonzalez acknowledged that the intersection was experiencing heavy traffic at the time of the collision and that he entered against the red light. Deputy Gonzalez also agreed that the buildings around the intersection could have obstructed his view, noting that the buildings surrounding the intersection may have made it "a little bit difficult" to safely "clear" the intersection. While Deputy Gonzalez stated that he slowed down and had his lights and siren activated, these facts are in dispute given the testimony of Hernandez coupled with the inconclusive surveillance video. Viewing the evidence in the light most favorable to Hernandez, we find that there is a fact issue as to whether Deputy Gonzalez acted with conscious indifference or reckless disregard for the safety of others.

*See Quested*, 440 S.W.3d at 281; TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2). As such, the trial court erred in granting the County's plea to the jurisdiction asserting the emergency exception to the TTCA. We sustain Hernandez's sole issue.[2]

### III. CONCLUSION

We reverse the trial court's judgment and remand to the trial court for proceedings consistent with this memorandum opinion.

NORA L. LONGORIA
Justice

Concurring Memorandum Opinion
by Justice Silva.

Delivered and filed on the
12th day of December, 2024.

---

[2] Without providing any evidence for support, the County argues in its response to Hernandez's motion for rehearing that Deputy Gonzalez did not need to have his lights and siren activated due to the nature of the call to which he was responding. TEX. TRANSP. CODE ANN. § 546.004(c)(1)(A). The County, however, did not produce any evidence to support the contention that Deputy Gonzalez had probable cause to believe that activating his lights or siren would "alert the suspect to the presence of the officer and cause the suspect to destroy or lose evidence or evade apprehension or identification of his vehicle." *See id.* The County simply makes a blanket assertion without support for such. Accordingly, we find that a plea to the jurisdiction could not be granted on this basis. *See Partin v. Costilla*, No. 08-99-00059-CV, 2000 WL 730749, at *6 (Tex. App.—El Paso June 8, 2000, no pet.) (mem. op., not designated for publication) (stating that the officer needed to produce more than a scintilla of evidence to support that the officer had probable cause to believe "because of the traffic conditions on a multilaned roadway, vehicles moving in response to the audible or visual signals may increase the potential for a collision, thus justifying Partin's decision to not utilize the visual signals").