**Linda S. GASKIN and Allen Brent Gaskin, Appellants,**

v.

**TITUS COUNTY HOSPITAL DISTRICT, d/b/a Titus County Memorial Hospital, Appellee.**

No. 06–97–00107–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 2, 1998.

Decided July 31, 1998.

Rehearing Overruled Sept. 9, 1998.

Christie G. Adams, Dunn, Nutter, Morgan, Shaw, Texarkana, AR, W. David Carter, Smith, Stroud, McClerkin, Dunn, Texarkana, AR, for appellants.

Brenda N. Hight, Cantey & Hanger, Dallas, Robert L. Hargett, Stephen G. Wohleb, Davis & Wilkerson, Austin, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Linda S. Gaskin and her husband, Allen Brent Gaskin, appeal from a summary judgment granted in favor of Titus County Hospital District, d/b/a Titus County Memorial Hospital, in the Gaskins' medical malpractice suit against the Hospital. The Hospital sought summary judgment on the basis that the Gaskins' claims were barred by the notice provisions of the Texas Tort Claims Act.

The Gaskins contend that the trial court erred in granting summary judgment and severing their claims against the Hospital because the summary judgment proof presented a genuine issue of material fact regarding whether Titus County Memorial Hospital had actual notice of the Gaskins' claims under the Texas Tort Claims Act.

Summary judgment proof presented showed that, on August 11, 1994, Linda Gaskin gave birth at Titus County Memorial Hospital. Gaskin's doctor, Gary B. Taylor, delivered the infant.[1] During the delivery an episiotomy was performed.[2] Gaskin experienced hemorrhaging after the delivery. She was discharged on August 13, 1994. Because of continued hemorrhaging, Gaskin consulted Dr. Taylor. After several visits, Dr. Taylor recommended that she should be hospitalized for a dilation and curettage (D & C) procedure.

The D & C was performed by Dr. Taylor on September 29, 1994, at the Hospital. During her recovery, Gaskin noticed a discharge of gas and feces through her vagina

---

1. The Gaskins' suit against Dr. Taylor was severed from this suit against the Hospital.

2. An episiotomy is a surgical incision into the perineum and vagina for obstetrical purposes.

during a bowel movement. Gaskin notified a nurse, who observed the problem and contacted Dr. Taylor. Though not reflected in the hospital records, Gaskin testified that Dr. Taylor examined her and told her that the discharge was her imagination. Gaskin was discharged from the Hospital, but continued to experience problems, including repeated vaginal discharge of gas and feces.

During an October visit to Dr. Taylor, Gaskin again complained of the discharge. Dr. Taylor responded that her complaints were normal and released her to return to work. Gaskin then consulted with another physician, who detected a rectovaginal fistula.[3] Gaskin was admitted to Women's Health Clinic in Little Rock, where the fistula was surgically repaired.

The Gaskins filed suit against Dr. Taylor and the Hospital in October 1996, alleging professional negligence arising out of Linda Gaskin's hospitalizations in August and September 1994. The Hospital moved for summary judgment, contending that the Gaskins had not met the statutory notice requirements of the Texas Tort Claims Act. In response to the motion, the Gaskins attached the affidavit of Dr. Ronald Ramus, Assistant Professor in the Department of Obstetrics and Gynecology at the University of Texas Southwestern Medical School at Dallas, who testified that the care Gaskin received fell below the standard of care.

Motion for Summary Judgment and Motion for Severance was granted on June 27, 1997.

## Standard of Review

To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[4] A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment.[5] In reviewing a summary judgment, the Court must accept evidence in favor of the nonmovant as true, indulging every reasonable inference and resolving all doubts in the nonmovant's favor.[6]

## Texas Tort Claims Act

The liability of a governmental unit is controlled by the Texas Tort Claims Act.[7] Generally, governmental units are immune from suit. The Texas Tort Claims Act waives this immunity in certain instances. Titus County Memorial Hospital is a unit of local government under the Act. Therefore, the Gaskins were obligated to comply with the Act's statutory notice requirements.

Section 101.101 of the Tort Claims Act [8] sets out notice requirements for the statute.

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.

. . . .

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

Under Section 101.101, a claimant must provide a governmental unit with formal, written notice of a claim against it within six

---

3. A rectovaginal fistula is an abnormal passage or communication between the rectum and the vagina.

4. TEX.R. CIV. P. 166a(c).

5. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

6. *Id.; Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

7. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–101.109 (Vernon 1997 & Supp.1998).

8. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101.

months of the incident giving rise to the claim; however, the formal notice requirements do not apply if the governmental unit has actual notice of the claim.[9]

The purpose of notice is to enable a governmental unit to investigate allegations against it while facts are fresh and conditions are substantially similar so it may guard against unfounded claims, settle claims, and prepare for trial.[10] If a claimant fails to give notice as mandated by the Act, the action is perpetually barred.[11]

### Actual Notice

The Gaskins concede that they failed to provide the Hospital with formal, written notice of their claim. However, they assert that such notice was not necessary because all requirements of actual notice were met.

▪ For a governmental unit to have actual notice of a claim, it must have knowledge of (1) a death or injury; (2) its alleged fault producing or contributing to the death or injury; and (3) the identity of the parties involved.[12] Whether a governmental unit has actual notice of a tort claim is typically a question of fact best decided by the jury.[13] However, the evidence must be of sufficient probative force to raise a fact issue.[14] Summary judgment may be proper where no evidence of actual notice exists to raise a genuine issue of fact.[15]

▪ The question, then, is does the evidence raise a fact issue as to whether the Hospital had notice of culpability. Unless the records indicate to the Hospital its possible culpability in causing the injury, the Hospital has no way of knowing that it might be implicated in a subsequent suit.[16]

The Gaskins argue that actual notice came through the nurse's knowledge as recorded in the nurse's notes. The nurse's notes record Gaskin's first complaint of stool passing from her vagina during Gaskin's recovery from the D & C. The nurse observed the stool, notified Dr. Taylor, and documented that Dr. Taylor stated he would check on Gaskin at a specific time. Gaskin's medical records do not reflect whether Dr. Taylor ever examined Gaskin prior to her discharge.

The Gaskins also argue that Dr. Ronald Ramus' affidavit attached to the summary judgment response provides additional proof that the Hospital had actual notice. Dr. Ramus testified that Gaskin's symptoms at the time of her D & C were indicative of a rectovaginal fistula. He stated that such problem is a recognized and not uncommon complication of vaginal deliveries. Dr. Ramus also stated that failure to evaluate the complaints of a patient passing gas and feces from her vagina fell below the standard of care. He does not state that it was negligent or below the standard of care to *cause* a fistula.

Dr. Ramus also testified specifically as to notice. He states:

> Mrs. Gaskin's complaints should have indicated to the attending nurse and to Dr. Taylor, as well as to anyone reviewing the records, that a rectovaginal fistula may have occurred during either the delivery or the subsequent D & C procedure performed on Mrs. Gaskin. Mrs. Gaskin's complaints gave Titus County Memorial Hospital, or its agents, notice of the rectovaginal fistula injury sustained by Mrs. Gaskin. Because Dr. Taylor was the individual who performed the delivery, the episiotomy, and the D & C procedure in

---

9. *Id.; Cathey,* 900 S.W.2d at 340.

10. *Cathey,* 900 S.W.2d at 341; *City of Houston v. Torres,* 621 S.W.2d 588, 591 (Tex.1981).

11. *Parrish v. Brooks,* 856 S.W.2d 522 (Tex.App.-Texarkana 1993, writ denied); *Reese v. Texas Dept. of Highways and Pub. Transp.,* 831 S.W.2d 529 (Tex.App.-Tyler 1992, writ denied).

12. *Cathey,* 900 S.W.2d at 340.

13. *Alvarado v. City of Lubbock,* 685 S.W.2d 646, 649 (Tex.1985); *McDonald v. State,* 936 S.W.2d 734, 738 (Tex.App.-Waco 1997, no writ), *citing Harrison v. Texas Dept. of Criminal Justice,* 915 S.W.2d 882, 890 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Parrish,* 856 S.W.2d at 525.

14. *Alvarado,* 685 S.W.2d 646; *McDonald,* 936 S.W.2d 734; *Parrish,* 856 S.W.2d 522.

15. *Parrish,* 856 S.W.2d at 525–26.

16. *Id.* at 525.

the Hospital, either the Hospital or its agents had notice that the Hospital could be alleged to have contributed to the injury.

■ The mere existence of medical records is insufficient to raise a fact issue about actual notice.[17] Medical records may, however, create a fact issue *if* they indicate to the hospital its possible culpability in causing the injuries.[18] When a health care provider should have known from its records that its negligence was more likely than not the cause of plaintiff's injuries, a fact issue will have been raised on the actual notice issue sufficient to thwart summary judgment.[19] The records must communicate culpability for the injuries.[20]

The Supreme Court addressed the issue of whether a hospital may receive actual notice of a claim against it from its own medical records in *Cathey v. Booth*.[21] In *Cathey*, the claimants used medical records and the affidavit of an expert who testified that, based on a review of the medical records, the health care providers had been negligent. The claimants argued that, because the expert was able to determine negligence from the records, the records served as actual notice of the injuries and the hospital's possible culpability in causing those injuries.[22] The Court held that the information in the records failed to adequately convey to the hospital its possible culpability, even with the expert's affidavit claiming there was evidence in the record of a breach of the standard of care.[23] It was not enough that the medical records showed that the governmental unit

had knowledge that an injury had occurred.[24] There must also be evidence in the records to show actual knowledge of the injury and possible culpability.[25]

This Court held similarly in *Parrish v. Brooks*.[26] In that case, the affidavits relied on to show actual notice did not show any fault in the treatment received by Parrish.[27] "[U]nless the records indicate to the hospital its possible culpability in causing the injuries, the hospital has no way of knowing that it might be implicated in a subsequent suit."[28]

The same reasoning was applied in *Dinh v. Harris County Hosp. Dist.*[29] with a different result. The facts in *Dinh* are similar to those in the present case. In *Dinh*, the hospital's summary judgment proof included the affidavit of the hospital's records custodian, who denied any actual or timely statutory notice. Titus County Memorial Hospital also attached to its summary judgment the affidavit of a Hospital employee. Frances Standridge, Assistant Administrator of the Hospital, stated that at Titus County Memorial Hospital she has the overall responsibility for the receipt of claims and lawsuits against the Hospital and that she did not receive any notice, including actual notice, of the Gaskins' claims. The Hospital argues that Ms. Standridge's affidavit shows that knowledge of the incident was not imparted to an individual who is charged with investigating the facts of the incident.

■ Actual notice is not limited to a particular official of local government, such as a hospital administrator.[30] It may be imputed

17. *Dinh v. Harris County Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.); *Parrish*, 856 S.W.2d at 525; *Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 632 (Tex.App.-Corpus Christi 1988, writ denied).

18. *Dinh*, 896 S.W.2d at 253; *Parrish*, 856 S.W.2d at 525; *Bourne*, 749 S.W.2d at 632.

19. *Reynosa v. Bexar County Hosp. Dist.*, 943 S.W.2d 74, 78 (Tex.App.-San Antonio 1997, writ denied), *citing Dinh*, 896 S.W.2d 248.

20. *Reynosa*, 943 S.W.2d at 78.

21. 900 S.W.2d 339.

22. *Id.* at 341–42.

23. *Id.* at 342.

24. *Id.* at 343.

25. *Id.*

26. *Parrish*, 856 S.W.2d 522.

27. *Id.* at 525.

28. *Id., quoting Bourne*, 749 S.W.2d at 632.

29. 896 S.W.2d at 252.

30. *Dinh*, 896 S.W.2d at 253; *Rosales v. Brazoria County*, 764 S.W.2d 342, 344 (Tex.App.-Texarkana 1989, no writ).

to the government by an agent or representative who has a duty to gather facts and investigate.[31] Hospital employees may have a duty to gather facts and investigate incidents.[32] The Gaskins argue that the hospital had notice through its agents, Dr. Taylor, and the nurse to whom Gaskin complained.

In *Dinh v. Harris County Hosp. Dist.,* the medical records showed that the plaintiff was denied treatment for a number of hours after treatment was ordered, that the plaintiff's health deteriorated during that time, that a doctor was paged but did not respond for two hours, and that the plaintiff suffered a stroke.[33] In the present case, Gaskin notified the nurse on duty of her complaint. The nurse observed and documented the complaint in the medical records and then contacted Dr. Taylor. The medical records fail to reflect any treatment for Gaskin's complaints, or even that she was examined by Dr. Taylor before being discharged from the hospital.

Also in the *Dinh* case, in addition to the medical records, the plaintiff filed the affidavit of the treating physician, who, after reviewing the records, concluded that the plaintiff had suffered a stroke while at the hospital. The hospital did not negate the causal connection between the stroke and the delay in the plaintiff's treatment. The Houston court found that medical records could constitute actual notice of injury when the delay in treatment, combined with the evidence of the man's deteriorating physical condition during the delay—and an expert's testimony making the causal connection between the plaintiff's injury and the hospital's conduct—raised a fact issue as to whether the hospital's conduct caused the injuries.[34]

The Gaskins filed the affidavit of Dr. Ramus, who stated that rectovaginal fistulas are a recognized and not uncommon complication of vaginal deliveries and that Gaskin's complaints should have put the Hospital on notice that a rectovaginal fistula may have occurred during either the delivery or the subsequent D & C procedure. Dr. Ramus did not state that the Hospital was negligent in *causing* the fistula, but that failure to recognize Gaskin's complaints as an indication of the fistula was below the standard of care.

Indulging all inferences from summary judgment evidence in favor of the nonmovant, we hold that Gaskin's medical records raise a fact issue as to the Hospital's actual notice of Gaskin's injury with respect to the Hospital's failure to recognize and treat the fistula. The medical records do not, as a matter of law, raise a fact issue as to the Hospital's actual notice of possible culpability for *causing* the fistula itself.

We uphold the summary judgment as it applies to the Gaskins' failure to give notice to the Hospital of its culpability in causing the fistula. However, we reverse and remand that portion of the summary judgment with respect to the Gaskins' claims for failure to recognize and treat that injury.

---

**31.** *City of Galveston v. Shu,* 607 S.W.2d 942, 946 (Tex.Civ.App.-Houston [1st Dist.] 1980, no writ).

**32.** *Dinh,* 896 S.W.2d at 253; *Texas Tech Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402, 412 (Tex.App.-El Paso 1994, writ denied).

**33.** *Dinh,* 896 S.W.2d at 253.

