**TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellant,**

v.

**Brian Edward SIMONS, Appellee.**

No. 09–01–551 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 1, 2002.

Decided April 11, 2002.

John Cornyn, Atty. Gen., Susan M. Stith, Asst. Atty. Gen., Austin, for appellant.

Aubrey R. Williams, Montez, Williams & Baird, PC, Waco, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

The Texas Department of Criminal Justice brings this accelerated interlocutory appeal from the district court's denial of its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(8) (Vernon Supp.2002). The Department presents one issue on appeal: "Whether Plaintiff's claim is barred because Defendant did not have Actual Notice within six months, as required by the Texas Tort Claims Act."

The appellee, Brian Edward Simons, is an inmate in the Texas Department of Criminal Justice, Institutional Division, who filed a state tort claim against the Department and a Department employee named Ron Canon, for injuries Simons sustained while their inmate work crew was using a tractor and mechanical posthole digger to mount a guard rail. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1997). In addition to sustaining facial fractures and lacerations, Simons lost an eye and the hearing in one ear.

A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issue raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Since plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit, the plea should be decided without delving into the merits of the case. *Id.* The plaintiff is not required to put on his case during the preliminary hearing simply to establish jurisdiction. *Id.* Therefore, in deciding whether Simons affirmatively demonstrated the court's jurisdiction to hear the cause, "we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *TX. Nat. Res. Con. Com'n v. White*, 46 S.W.3d 864, 868 (Tex.2001).

The Texas Tort Claims Act requires a claimant to provide a governmental unit with formal, written notice of a claim against it within six months of the incident giving rise to the claim. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 1997). The formal notice requirements do not apply if the governmental unit has actual notice of the claim against it. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(c) (Vernon 1997). The existence of actual notice is a question of fact. *Dinh v. Harris County Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.). Notice can be imputed to the Department by an agent or representative who has a duty to gather facts and investigate. *Id.* Actual notice to a governmental unit requires knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). The purpose of the notice of claim requirement is to ensure a prompt reporting of claims to enable the governmental unit to investigate and to gather the information needed "to guard against unfounded claims, settle claims and prepare for trial" "while facts are fresh and conditions remain substantially the same." *City of Houston v. Torres*, 621 S.W.2d 588, 591 (Tex.1981).

The parties do not dispute that Simons failed to give formal written notice. Likewise, the parties do not dispute that the Department had actual knowledge of the occurrence of the injury and the identity of the parties involved. Therefore, we must determine whether the pleadings and evidence are sufficient to allege that the Department received actual notice of its potential liability.

On the day of the accident, Ron Canon, the plumber and supervisor, prepared a "Supervisor Report on Employee/Inmate Injury." Included in the report are the following statements: "On 8/30/94 while digging holes to mount guard, digger got stuck. I/M Simons, Brian 61489 and myself ... used a pipe wrench to free digger and took wrench off when free. I/M put wrench back on, when PTO was turned on wrench hit I/M on right cheek.", and "Will

counsel and retrain inmate on SOP for small hand tools." Appended to the minutes of a Special Call Safety Meeting, conducted by the Terrell Unit Safety Committee on September 6, 1994, is a report from the Unit Safety Officer to the Regional Safety Supervisor. The report included statements from six witnesses. An offense report shows that Simons was charged with refusing or failing to obey an order to stand clear of the digger.

Harris Jackson, a Safety Officer from the Terrell Unit, and Bernard Belvin, a Central Region Safety Supervisor, interviewed Simons at the hospital on September 2, 1994. The Department provided a transcript of the interview with its plea to the jurisdiction. The Department relies heavily on Simons's description of the incident, as follows:

> We was digging post holes for the barricade to go around the gas well. The guy that was operating the tractor was kind of inexperienced, he was kind of new at it. He buried the auger in the ground which caused the front of the tractor to lift up. I asked Mr. Cannon and them to go get me a pipe wrench cause I'm a farm boy in the world, that is how you get them un stuck in the world, and I was going to back the auger off and get it up off the ground. The boy that was operating the tractor evidently, accidently he had to hit the PTO or something and it caused the pipe wrench to hit me. That is the only way that it could have happened. If nobody ... if he hadn't hit that PTO or something like that would have happened, the wrench wouldn't have hit me, because you can back it off by hand and turn the wrench backwards and back it off by hand that's how we do it in the world.

> To me, it wasn't no bosses' fault. I don't think it was my fault, I don't think it

was the tractor driver's fault. I just think it is one of those things that just happened, in my opinion. You know, I don't hold no grudges against nobody, I don't blame nobody for it. It is probably just as much my fault, getting down there and doing it than it was anybody else.

> . . . .

> So, it is just one of them things that ... that's the only way I was taught all my life how to get em un-stuck and that was the way I was trying to [sic] get it un-stuck and just somebody made a mistake, that's all there was to it. I don't want nobody getting no trouble or nothing behind that, losing no good time, because it's just a mistake. You know, a mistake is a mistake.

Later in the interview, Belvin stated, "We are just trying to make sure if there was a procedure that was done in doing that, that we could bring it up and prevent it from ever happening that way again. And I know you would want to help us do that." Belvin also asked Simons if he recalled being told to stand clear. Simons did not remember. Simons added, "I don't believe no boss did anything wrong or supervising an inmate were any kind of way wrong."

Because its investigation revealed that the accident was the result of Simons's failure to stand clear when ordered, the Department argues, the record does not demonstrate that the Department had actual notice that it was more likely than not the cause of the injury. The Department relies on a series of medical malpractice cases in which medical records were relied upon to support a claim of actual notice. For instance, in *Cathey v. Booth*, 900 S.W.2d at 342, the hospital's records revealed the thirty minute delay in performing a Caesarean section information in the hospital's records but failed to adequately

convey to the hospital its possible medical negligence. In *Parrish v. Brooks*, 856 S.W.2d 522, 525 (Tex.App.-Texarkana 1993, writ denied), the hospital's records did not indicate its possible culpability for failing to diagnose a liver injury and for authorizing the patient's transfer to another facility. In *Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 632 (Tex. App.-Corpus Christi 1988, writ denied), a suit alleging premature release of a psychiatric patient who subsequently injured family members in a fire, the hospital's records did not suggest its possible culpability for the injuries sustained by the family members in the fire.

Actual notice was present in two of the cases cited by the appellant. In *Gaskin v. Titus County Hosp. Dist.*, 978 S.W.2d 178, 181 (Tex.App.-Texarkana 1998, pet. denied), a description of the symptoms of a rectovaginal fistula in an obstetric patient's records was insufficient to provide notice of the hospital's possible culpability in causing the fistula, but did raise a fact issue as to the hospital's failure to recognize and treat the condition. The hospital records provided actual notice in *Dinh v. Harris County Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex.App.-Houston [1st Dist.], writ dism'd w.o.j.), where the medical records demonstrated that blood was ordered and the doctor was paged in response to a stroke victim's deteriorating condition hours before the patient actually received treatment. The court found that the evidence that the hospital's personnel delayed treatment, combined with the evidence of the patient's deteriorating condition, raised a fact issue as to the hospital's actual notice of possibility the Hospital caused the injuries. *Id.*

To support its argument that its records do not raise a fact issue on notice of culpability, the Department relies upon the conclusion it reached after it completed its investigation of the incident. We are concerned here only with the Department's realization of its possible culpability, that is, whether the Department realized that it could be accused of negligence arising from the accident. In contrast to cases questioning whether the governmental entity's treatment records revealed its deviation from the standard of care, in this case the Department's safety officers conducted an extensive investigation of a serious injury that occurred while the inmates were operating motor-driven machinery in a supervised work detail. Reports were prepared and promptly submitted to the unit's safety committee. That notice, sufficient to put the Department on inquiry of its possible fault, is demonstrated by the existence of the safety review actually conducted. The Department did investigate the accident and gather the information it needed to defend Simons's claim.

Because we conclude that the Department had actual notice of Brian Edward Simons's claim under the Texas Tort Claims Act, we need not address whether the notice requirement is jurisdictional. We overrule the issue presented by the Texas Department of Criminal Justice. The trial court's order denying the plea to the jurisdiction is affirmed.

AFFIRMED.

DAVID B. GAULTNEY, Justice, dissenting.

The required "actual notice" to the governmental entity is notice of a claim of fault, not simply notice of an accident. As revealed in the portion of Simons' statement quoted in the majority opinion, Simons affirmatively told the government he did not claim the government or anyone else was at fault. Nevertheless, the majority holds that this claim of no fault constituted actual notice of a claim of fault.

I respectfully disagree and therefore dissent.