In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-551 CV


____________________



TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellant



V.



BRIAN EDWARD SIMONS, Appellee






On Appeal from the 411th District Court


Polk County, Texas


Trial Cause No. CIV16,072






OPINION


 The Texas Department of Criminal Justice brings this accelerated interlocutory
appeal from the district court's denial of its plea to the jurisdiction. See Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(8) (Vernon Supp. 2002). The Department presents one issue
on appeal: "Whether Plaintiff's claim is barred because Defendant did not have Actual
Notice within six months, as required by the Texas Tort Claims Act." The appellee, Brian
Edward Simons, is an inmate in the Texas Department of Criminal Justice, Institutional
Division, who filed a state tort claim against the Department and a Department employee
named Ron Canon, for injuries Simons sustained while their inmate work crew was using
a tractor and mechanical posthole digger to mount a guard rail. See Tex. Civ. Prac. &
Rem. Code Ann. § 101.021(1) (Vernon 1997). In addition to sustaining facial fractures
and lacerations, Simons lost an eye and the hearing in one ear. 

 A court deciding a plea to the jurisdiction is not required to look solely to the
pleadings but may consider evidence and must do so when necessary to resolve the
jurisdictional issue raised. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000). Since plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat
a cause of action without regard to whether the claims asserted have merit, the plea should
be decided without delving into the merits of the case. Id. The plaintiff is not required
to put on his case during the preliminary hearing simply to establish jurisdiction. Id. 
Therefore, in deciding whether Simons affirmatively demonstrated the court's jurisdiction
to hear the cause, "we consider the facts alleged by the plaintiff and, to the extent it is
relevant to the jurisdictional issue, the evidence submitted by the parties." TX. Nat. Res. 
Con. Com'n v. White, 46 S.W.3d 864, 868 (Tex. 2001).

 The Texas Tort Claims Act requires a claimant to provide a governmental unit with
formal, written notice of a claim against it within six months of the incident giving rise to
the claim. Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a) (Vernon 1997). The formal
notice requirements do not apply if the governmental unit has actual notice of the claim
against it. Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c) (Vernon 1997). The
existence of actual notice is a question of fact. Dinh v. Harris County Hosp. Dist., 896
S.W.2d 248, 253 (Tex. App.--Houston [1st Dist.] 1995, writ dism'd w.o.j.). Notice can
be imputed to the Department by an agent or representative who has a duty to gather facts
and investigate. Id. Actual notice to a governmental unit requires knowledge of (1) a
death, injury, or property damage; (2) the governmental unit's alleged fault producing or
contributing to the death, injury, or property damage; and (3) the identity of the parties
involved. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). The purpose of the notice
of claim requirement is to ensure a prompt reporting of claims to enable the governmental
unit to investigate and to gather the information needed "to guard against unfounded
claims, settle claims and prepare for trial" "while facts are fresh and conditions remain
substantially the same." City of Houston v. Torres, 621 S.W.2d 588, 591 (Tex. 1981). 

 The parties do not dispute that Simons failed to give formal written notice. 
Likewise, the parties do not dispute that the Department had actual knowledge of the
occurrence of the injury and the identity of the parties involved. Therefore, we must
determine whether the pleadings and evidence are sufficient to allege that the Department
received actual notice of its potential liability.

 On the day of the accident, Ron Canon, the plumber and supervisor, prepared a
"Supervisor Report on Employee/Inmate Injury." Included in the report are the following
statements: "On 8/30/94 while digging holes to mount guard, digger got stuck. I/M
Simons, Brian 61489 and myself . . . used a pipe wrench to free digger and took wrench
off when free. I/M put wrench back on, when PTO was turned on wrench hit I/M on right
cheek.", and "Will counsel and retrain inmate on SOP for small hand tools." Appended
to the minutes of a Special Call Safety Meeting, conducted by the Terrell Unit Safety
Committee on September 6, 1994, is a report from the Unit Safety Officer to the Regional
Safety Supervisor. The report included statements from six witnesses. An offense report
shows that Simons was charged with refusing or failing to obey an order to stand clear of
the digger. 

 Harris Jackson, a Safety Officer from the Terrell Unit, and Bernard Belvin, a
Central Region Safety Supervisor, interviewed Simons at the hospital on September 2,
1994. The Department provided a transcript of the interview with its plea to the
jurisdiction. The Department relies heavily on Simons's description of the incident, as
follows: 

 We was digging post holes for the barricade to go around the gas well. The
guy that was operating the tractor was kind of inexperienced, he was kind of
new at it. He buried the auger in the ground which caused the front of the
tractor to lift up. I asked Mr. Cannon and them to go get me a pipe wrench
cause I'm a farm boy in the world, that is how you get them un stuck in the
world, and I was going to back the auger off and get it up off the ground. 
The boy that was operating the tractor evidently, accidently he had to hit the
PTO or something and it caused the pipe wrench to hit me. That is the only
way that it could have happened. If nobody . . . if he hadn't hit that PTO
or something like that would have happened, the wrench wouldn't have hit
me, because you can back it off by hand and turn the wrench backwards and
back it off by hand that's how we do it in the world.


 To me, it wasn't no bosses' fault. I don't think it was my fault, I don't think
it was the tractor driver's fault. I just think it is one of those things that just
happened, in my opinion. You know, I don't hold no grudges against
nobody, I don't blame nobody for it. It is probably just as much my fault,
getting down there and doing it than it was anybody else.


 . . . . 


 So, it is just one of them things that . . . that's the only way I was taught all
my life how to get em un-stuck and that was the way I was trying to [sic] get
it un-stuck and just somebody made a mistake, that's all there was to it. I
don't want nobody getting no trouble or nothing behind that, losing no good
time, because it's just a mistake. You know, a mistake is a mistake. 


 Later in the interview, Belvin stated, "We are just trying to make sure if there was
a procedure that was done in doing that, that we could bring it up and prevent it from ever
happening that way again. And I know you would want to help us do that." Belvin also
asked Simons if he recalled being told to stand clear. Simons did not remember. Simons
added, "I don't believe no boss did anything wrong or supervising an inmate were any
kind of way wrong." 

 Because its investigation revealed that the accident was the result of Simons's failure
to stand clear when ordered, the Department argues, the record does not demonstrate that
the Department had actual notice that it was more likely than not the cause of the injury. 
The Department relies on a series of medical malpractice cases in which medical records
were relied upon to support a claim of actual notice. For instance, in Cathey v. Booth, 900
S.W.2d at 342, the hospital's records revealed the thirty minute delay in performing a
Caesarean section information in the hospital's records but failed to adequately convey to
the hospital its possible medical negligence. In Parrish v. Brooks, 856 S.W.2d 522, 525
(Tex. App.--Texarkana 1993, writ denied), the hospital's records did not indicate its
possible culpability for failing to diagnose a liver injury and for authorizing the patient's
transfer to another facility. In Bourne v. Nueces County Hosp. Dist., 749 S.W.2d 630,
632 (Tex. App.--Corpus Christi 1988, writ denied), a suit alleging premature release of
a psychiatric patient who subsequently injured family members in a fire, the hospital's
records did not suggest its possible culpability for the injuries sustained by the family
members in the fire.

 Actual notice was present in two of the cases cited by the appellant. In Gaskin v.
Titus County Hosp. Dist., 978 S.W.2d 178, 181 (Tex. App.--Texarkana 1998, pet.
denied), a description of the symptoms of a rectovaginal fistula in an obstetric patient's
records was insufficient to provide notice of the hospital's possible culpability in causing
the fistula, but did raise a fact issue as to the hospital's failure to recognize and treat the
condition. The hospital records provided actual notice in Dinh v. Harris County Hosp.
Dist., 896 S.W.2d 248, 253 (Tex. App.--Houston [1st Dist.], writ dism'd w.o.j.), where
the medical records demonstrated that blood was ordered and the doctor was paged in
response to a stroke victim's deteriorating condition hours before the patient actually
received treatment. The court found that the evidence that the hospital's personnel delayed
treatment, combined with the evidence of the patient's deteriorating condition, raised a fact
issue as to the hospital's actual notice of possibility the Hospital caused the injuries. Id.

 To support its argument that its records do not raise a fact issue on notice of
culpability, the Department relies upon the conclusion it reached after it completed its
investigation of the incident. We are concerned here only with the Department's
realization of its possible culpability, that is, whether the Department realized that it could
be accused of negligence arising from the accident. In contrast to cases questioning
whether the governmental entity's treatment records revealed its deviation from the
standard of care, in this case the Department's safety officers conducted an extensive
investigation of a serious injury that occurred while the inmates were operating motor-driven machinery in a supervised work detail. Reports were prepared and promptly
submitted to the unit's safety committee. That notice, sufficient to put the Department on
inquiry of its possible fault, is demonstrated by the existence of the safety review actually
conducted. The Department did investigate the accident and gather the information it
needed to defend Simons's claim.

 Because we conclude that the Department had actual notice of Brian Edward
Simons's claim under the Texas Tort Claims Act, we need not address whether the notice
requirement is jurisdictional. We overrule the issue presented by the Texas Department
of Criminal Justice. The trial court's order denying the plea to the jurisdiction is affirmed.

 AFFIRMED. 

 ______________________________

 RONALD L. WALKER

 Chief Justice


Submitted on April 1, 2002

Opinion Delivered April 11, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.






DISSENTING OPINION



 The required "actual notice" to the governmental entity is notice of a claim of fault,
not simply notice of an accident. As revealed in the portion of Simons' statement quoted
in the majority opinion, Simons affirmatively told the government he did not claim the
government or anyone else was at fault. Nevertheless, the majority holds that this claim
of no fault constituted actual notice of a claim of fault. I respectfully disagree and
therefore dissent.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Dissent Delivered 

April 11, 2002

Publish