COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-401-CV
 
NATIONAL SPORTS & SPIRIT, INC.,       
           
           
           
    APPELLANTS
NSG CORPORATION, NATIONAL
SPIRIT GROUP, LTD., INDIVIDUALLY AND
D/B/A MARCHING AUXILIARIES OF AMERICA,
AND MARCHING AUXILIARIES, INC.,
INDIVIDUALLY AND D/B/A MARCHING
AUXILIARIES OF AMERICA
V.
THE UNIVERSITY OF NORTH TEXAS       
           
           
           
        APPELLEE
------------
FROM THE 367
TH DISTRICT COURT OF DENTON
COUNTY
------------
OPINION
------------
Appellants National Sports and
Spirit, Inc., NSG Corporation, National Spirit Group, Ltd., individually and
d/b/a Marching Auxiliaries of America, and Marching Auxiliaries, Inc.,
individually and d/b/a Marching Auxiliaries of America appeal from the trial
court's order granting the University of North Texas's (UNT) plea to the
jurisdiction. In five points, appellants argue that (1) the trial court erred in
granting UNT's plea to the jurisdiction because appellants' pleadings show that
UNT waived sovereign immunity under the Texas Tort Claims Act (TTCA); (2) the
trial court erred in granting the plea to the jurisdiction because appellants'
pleadings satisfy the personal injury damage requirement of TTCA section
101.021; (3) the trial court erred in granting the plea to the jurisdiction
because the Brown and Root line of cases is still
good law; (4) the trial court erred in granting the plea to the jurisdiction
because the notice requirements of the TTCA have been satisfied; and (5) the
trial court erred in granting the plea to the jurisdiction because sovereign
immunity can be waived for strict liability under the TTCA. We affirm.
I. Factual
Background
From June 9-12, 1999, appellants
ran a drill team camp on UNT's campus. During the camp, UNT served food and ice
to the participants from a campus cafeteria. After the camp was over, several
participants became seriously ill from E. coli. Catherine Harvey, a participant
in the camp, filed a personal injury claim against UNT and appellants.
Appellants filed a cross-claim against UNT for indemnification, alleging that
Harvey's claim was a products liability action covered by Texas Civil Practice
and Remedies Code section 82.002. Tex. Civ. Prac. & Rem. Code Ann. § 82.002
(Vernon 1997). UNT filed a plea to the jurisdiction and moved to dismiss and
sever appellants' cross-claim. UNT argued that it was a governmental entity
entitled to sovereign immunity, and immunity had not been waived. The trial
court granted UNT's plea.
II. Notice
Requirements
In their fourth point, appellants
allege that the trial court erred in granting the plea to the jurisdiction
because the notice requirements of the TTCA were satisfied. UNT responds that
appellants cannot satisfy the notice requirements of the TTCA by relying upon
actual or written notice of the underlying cause of action. Thus, appellants
failed to give the required six month notice under the TTCA. Because compliance
with the notice provisions of the TTCA is a prerequisite to a waiver of
sovereign immunity, we will address this point first. State v. Kreider,
44 S.W.3d 258, 263 (Tex. App.--Fort Worth 2001, pet. denied).
A plea to the jurisdiction is a
dilatory plea, the purpose of which is to "defeat a cause of action without
regard to whether the claims asserted have merit." Bland ISD v. Blue,
34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's authority
to determine the subject matter of a pleaded cause of action. City of
Midland v. Sullivan, 33 S.W.3d 1, 6 (Tex. App.--El Paso 2000, pet. dism'd
w.o.j.); State v. Benavides, 772 S.W.2d 271, 273 (Tex. App.--Corpus
Christi 1989, writ denied).
We review a trial court's ruling on
a plea to the jurisdiction under a de novo standard of review because subject
matter jurisdiction is a question of law. City of Fort Worth v. Robles,
51 S.W.3d 436, 439 (Tex. App.--Fort Worth 2001, pet. denied). In determining
whether jurisdiction exists, rather than looking at the claim's merits, we look
to the allegations in the pleadings, accept them as true, and construe them in
favor of the pleader. See County of Cameron v. Brown, 80 S.W.3d 549,
555 (Tex. 2002); Met-Rx USA, Inc. v. Shipman, 62 S.W.3d 807, 810 (Tex.
App.--Waco 2001, pet. denied). We may also consider evidence necessary to
resolve the jurisdictional issues raised. See Brown, 80 S.W.3d at 555.
In order to invoke the waiver of
sovereign immunity provided by the TTCA, a claimant must provide the
governmental unit with formal, written notice of the claim against it within six
months of the incident giving rise to the claim. Tex. Civ. Prac. & Rem. Code
Ann. § 101.101(a) (Vernon 1997). However, the formal notice requirements do not
apply if the governmental unit has actual notice of the claim. Id. §
101.101(c). The purpose of the notice requirement is to ensure prompt reporting
of claims in order to enable governmental units to gather information necessary
to guard against unfounded claims, settle claims, and prepare for trial. Cathey
v. Booth, 900 S.W.2d 339, 341 (Tex. 1995); see also Texana
Cmty. MHMR Ctr. v. Silvas, 62 S.W.3d 317, 324-25 (Tex. App.--Corpus Christi
2001, no pet.). Because compliance with the notice provisions of the TTCA is a
prerequisite to a waiver of sovereign immunity, failure to give notice under
section 101.101 precludes the waiver of sovereign immunity from suit. Kreider,
44 S.W.3d at 263; Brown v. City of Houston, 8 S.W.3d 331, 334 (Tex.
App.--Waco 1999, pet. denied).
Actual notice to a governmental
unit requires knowledge of (1) a death, injury, or property damage; (2) the
governmental unit's alleged fault producing or contributing to the death,
injury, or property damage; and (3) the identity of the parties involved. Cathey,
900 S.W.2d at 341. To have actual notice, the governmental unit must have the
same information it would have had if the claimant had complied with the formal
notice requirements. Texana, 62 S.W.3d at 324-25; Bourne v. Nueces
County Hosp. Dist., 749 S.W.2d 630, 632-33 (Tex. App.--Corpus Christi 1988,
writ denied). Mere notice that an incident has occurred is not enough to
establish actual notice for purposes of the TTCA. See Putthoff v. Ancrum,
934 S.W.2d 164, 173 (Tex. App.--Fort Worth 1996, writ denied).
Additionally, actual notice may be
imputed to the governmental unit only when an agent or representative of the
entity charged with a duty to investigate and report to the governmental unit
receives the three elements of actual notice outlined in Cathey. See
Dinh v. Harris County Hosp. Dist., 896 S.W.2d 248, 252-53 (Tex.
App.--Houston [1st Dist.] 1995, writ dism'd w.o.j.). But governmental
entities have actual notice to the extent that a prudent entity could ascertain
its potential liability stemming from an incident, either by conducting a
further investigation or because of its obvious role in contributing to the
incident. City of San Angelo v. Smith, 69 S.W.3d 303, 307 (Tex.
App.--Austin 2002, pet. denied).
Appellants concede that they did
not meet the formal notice requirements of section 101.101(a) of the TTCA;
however, they argue that UNT had actual notice of the claim under section
101.101(c). See Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a),
(c). Thus, we must determine whether the pleadings and evidence are sufficient
to allege that UNT received actual notice of its potential liability. See
Tex. Dep't of Criminal Justice v. Simons, 74 S.W.3d 138, 140 (Tex.
App.--Beaumont 2002, pet. granted); see also Texana, 62 S.W.3d at 325.
The record shows that the Centers
for Disease Control and Prevention (CDC) conducted an investigation concerning
the E. coli outbreak on UNT's campus. After completing the investigation in
August of 1999, Dr. John T. Brooks attached a memorandum with his findings and
submitted it to state officials before leaving Texas.
The memorandum states that the
Texas Department of Health was notified of a cluster of illnesses among persons
who attended a summer camp from June 9-11 on the campus of a state university.
The sick individuals reported nausea, vomiting, severe abdominal cramping, and
diarrhea, some of which was bloody. Two of the individuals were hospitalized
with hemolytic uremic syndrome.
The CDC staff conducted a
laboratory investigation in which they collected rectal swabs and/or stool
samples from the staff who prepared or served the food from the cafeteria during
the camp. An environmental investigation of the cafeteria kitchen revealed
evidence of potential temperature abuse, including undercooking and inadequately
reheating food. The salad bar also contained vegetables that were placed
directly from the bag to the salad bar without being washed. UNT provided large
trash cans of ice for the campers; however, no scoop was provided, and the ice
was often refilled without cleaning the cans. The CDC ultimately determined that
the illnesses were caused by E. coli that contaminated the ice and the salad
bar.
Based on the thoroughness of the
CDC report, there is little doubt that UNT had knowledge of the injuries
resulting from the E. coli. The report discusses how many individuals got sick,
what type of symptoms they had, and specifically states that two people were
hospitalized.
UNT's possible fault in the
incident is also provided by the CDC report. The report discusses the
investigation of the cafeteria staff and the cafeteria itself. It further
concludes that the illnesses were the result of E. coli that was in the salad
bar and ice barrels provided by UNT. Thus, UNT had notice of its possible fault
in the incident.
Finally, UNT tries to argue that it
did not know the identity of the parties involved because the CDC report never
specifically references UNT, but only refers to a state university, and there is
no evidence that UNT had knowledge of the report. This argument fails because
the report specifically states that it was "submitted to state officials
before leaving Texas." Furthermore, the CDC attached to its final report
the questionnaire that it distributed to the campers. The questionnaire was
titled "Marching Auxiliary--Drill Camp Attendees Questionnaire University
of North Texas Outbreak June 9-June 11, 1999." Thus, UNT knew that the
outbreak occurred on its campus and that appellants, who were formerly doing
business as Marching Auxiliary, were involved.(1)
See City of San Angelo, 69 S.W.3d at 307 (holding that
governmental entities have actual notice to the extent that a prudent entity
could ascertain its potential liability stemming from an incident because of its
obvious role in contributing to the incident).
After reviewing the evidence in the
record, we conclude that appellants have met the three elements of section
101.101 for actual notice. Tex. Civ. Prac. & Rem. Code Ann. § 101.101. We
sustain appellants' fourth point.
III. Waiver of
Sovereign Immunity
In their first point, appellants
contend that the trial court erred in granting UNT's plea to the jurisdiction
because appellants' pleadings show that UNT waived sovereign immunity under the
TTCA. UNT responds that for a statute to waive sovereign immunity, the waiver
must be expressed in clear and unambiguous language and that Chapter 82 of the
Texas Civil Practice and Remedies Code, upon which appellants' claim is based,
does not meet this requirement because it does not include a waiver of immunity
provision.
The State of Texas, even if it has
committed tortious acts, is immune from suit unless it gives its consent to be
sued. Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997)
(holding that immunity from suit bars a remedy until the legislature consents to
suit); Mo. Pac. R.R. v. Brownsville Navigation Dist., 453 S.W.2d 812,
813 (Tex. 1970) (same). As an agency of the State, UNT enjoys the protection
afforded by this sovereign immunity, except in instances where immunity has been
expressly waived by statute. See Delaney v. Univ. of Houston,
835 S.W.2d 56, 58-59 (Tex. 1992); see also Fed. Sign, 951 S.W.2d at 405
(stating that a suit against an agency of the state is considered a suit against
the State of Texas).
It is well-settled in Texas that
for the legislature to waive the state's sovereign immunity, a statute or
resolution must contain a clear and unambiguous expression of the legislature's
waiver of immunity. Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175,
177 (Tex. 1994); see also Wichita Falls State Hosp. v. Taylor, 46 Tex.
Sup. Ct. J. 494, 496, 2002 WL 32029019, at *3 (March 6, 2003). In 2001, the
legislature ratified this approach by adding section 311.034 to the Code
Construction Act. See Tex. Gov't Code Ann. § 311.034 (Vernon Supp.
2003); Wichita Falls State Hosp., 46 Tex. Sup. Ct. J. at 496, 2002 WL
32029019, at *3. It states that "[i]n order to preserve the legislature's
interest in managing state fiscal matters through the appropriations process, a
statute shall not be construed as a waiver of sovereign immunity unless the
waiver is effected by clear and unambiguous language." Tex. Gov't Code Ann.
§ 311.034.
Under section 101.021(2) of the
TTCA, a state government unit is liable for "personal injury and death . .
. caused by a condition or use of tangible personal or real property if the
governmental unit would, were it a private person, be liable to the claimant
according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. §
101.021(2). Thus, governmental immunity is waived when the following three
conditions are met: (1) the cause of action is for personal injury or death; (2)
the personal injury or death is caused by a condition or use of tangible
personal or real property; (3) and the governmental unit would, if it were a
private person, be liable to the claimant under Texas law. Id.
Here, appellants' pleadings fail to
establish the third element of section 101.021(2), that the governmental unit
would, if it were a private person, be liable to the claimant under Texas law. Id.
Appellants argue that they satisfied this element because this is a Chapter 82
products liability cause of action, and UNT, as the manufacturer of the
defective product, owes a statutory duty to indemnify appellants, as the seller.
See id. § 82.002(a) (Vernon 1997). UNT, however, contends
that immunity is not waived because section 82.002(a) does not clearly waive
sovereign immunity.
Although some statutes leave no
doubt about the legislature's intent to waive immunity, when a statute does not
use clear language to confirm its intent, the Texas Supreme Court has employed
several factors to determine whether a statute that is less explicit may
nevertheless waive the State's immunity from suit. See Wichita
Falls State Hosp., 46 Tex. Sup. Ct. J. at 497, 2002 WL 32029019, at *3.
First, a statute that waives
immunity must do so beyond doubt, even though it does not have to be a model of
"perfect clarity." Id.; City of LaPorte v. Barfield,
898 S.W.2d 288, 291-92 (Tex. 1995); see also Kerrville State Hosp. v.
Fernandez, 28 S.W.3d 1, 8 (Tex. 2000) (finding waiver when the provision in
question would be meaningless unless immunity was waived). Second, when
construing a statute that purportedly waives sovereign immunity, any ambiguity
should generally be resolved by retaining immunity. Wichita Falls State Hosp.,
46 Tex. Sup. Ct. J. at 497, 2002 WL 32029019, at *3; Travis County v. Pelzel
& Assocs., Inc., 77 S.W.3d 246, 249-50 (Tex. 2002). Third, if the
legislature requires that the State be joined in a lawsuit for which immunity
would otherwise attach, the legislature has intentionally waived sovereign
immunity. Wichita Falls State Hosp., 46 Tex. Sup. Ct. J. at 497, 2002
WL 32029019, at *4; Tex. Educ. Agency v. Leeper, 893 S.W.2d 432, 446
(Tex. 1994). Finally, the court has recognized that when waiving immunity by
explicit language, the legislature often enacts simultaneous measures to
insulate public resources from the reach of judgment creditors. Wichita
Falls State Hosp., 46 Tex. Sup. Ct. J. at 497, 2002 WL 32029019, at *4; see
also Tex. Civ. Prac. & Rem. Code Ann. § 101.023-.024 (Vernon 1997
& Supp. 2003); Tex. Gov't Code Ann. § 554.003 (Vernon Supp. 2003).
Texas Civil Practice and Remedies
Code section 82.002 does not contain the sort of language that the legislature
generally uses to confirm its intent to waive immunity from suit. Thus, with the
above principles in mind, we will examine the statutory language of Chapter 82
to determine whether the legislature implicitly waived immunity.
The statute does not require that
the State be joined in a lawsuit for which immunity would otherwise attach,
which implies that waiver does not apply.  See Wichita Falls
State Hosp., 46 Tex. Sup. Ct. J. at 497, 2002 WL 32029019, at *4. The
statute also does not include a simultaneous provision to insulate the
limitation on the State's potential liability. See id. Under the
statute, a manufacturer must indemnify a seller against "loss," which
includes court costs and other reasonable expenses, reasonable attorney's fees,
and other reasonable damages. Tex. Civ. Prac. & Rem. Code Ann. § 82.002(b).
Even though the statute requires the indemnity for "reasonable"
expenses, fees, and damages, it still possibly subjects the State to
indeterminate damage awards. See Wichita Falls State Hosp., 46
Tex. Sup. Ct. J. at 497, 2002 WL 32029019, at *7 (stating that "[o]ur
decisions recognizing a waiver of immunity have generally left undisturbed the [l]egislature's
interest in protecting the State's financial resources"). This weighs
against waiver of immunity. Finally, although the courts do not require a
statute to use "magic words" to establish waiver of immunity, the
statute must still waive immunity beyond doubt. See id. at
497, 2002 WL 32029019, at *3; see also Tex. Gov't Code Ann. § 311.034
("In order to preserve the legislature's interest in managing state fiscal
matters through the appropriations process, a statute shall not be construed as
a waiver of sovereign immunity unless the waiver is effected by clear and
unambiguous language.").
Here, we conclude that the
legislature did not intend waiver of immunity under section 82.002. Therefore,
appellants may not use a statute that does not waive immunity to then try and
prove waiver under the third element of the TTCA. See Tex. Civ. Prac.
& Rem. Code Ann. § 101.021(2) (requiring that a government unit would, if
it were a private person, be liable to the claimant under Texas law). To allow
otherwise would mean that any plaintiff who had a cause of action under any
statute where a private person would be liable could then show waiver under the
third element of the TTCA. See id. We do not believe that the intention
of the TTCA is to be so broadly construed. See Michael v. Travis County Hous.
Auth., 995 S.W.2d 909, 912 (Tex. App.--Austin 1999, no pet.) (holding that
waiver is to be liberally construed in order to effectuate the purposes of the
Act); see also Tex. Natural Res. & Conservation Comm'n v. White, 13
S.W.3d 819, 825 (Tex. App.--Fort Worth 2000), rev'd on other grounds,
46 S.W.3d 864 (Tex. 2001) (stating "we will interpret the TTCA waiver
provisions broadly, but within reason and while keeping in mind that the
legislature did not intend a general waiver of governmental immunity").
The supreme court has cautioned,
however, against an expansive reading of the waiver that would cause the
exception to lose its limited character: "[T]he waiver of immunity in the
Tort Claims Act is not, and was not intended to be, complete. Arguments for
applications of the Act that would essentially result in its waiver becoming
absolute must therefore be rejected as contrary to the Act's fundamental
purpose." Dallas County MHMR v. Bossley, 968 S.W.2d 339, 342
(Tex.), cert. denied, 525 U.S. 1017 (1998). Our holding does not result
in waiver becoming absolute because appellants had other theories that they
could have used to bring their claim under the TTCA. Thus, appellants' first
point is overruled.
IV. Personal Injury
Damage Requirement
In their second point, appellants
allege that the trial court erred in granting the plea to the jurisdiction
because appellants' pleadings satisfy the personal injury damage requirement of
TTCA section 101.021. Because we have concluded that the third element of
section 101.021(2) has not been met, we need not address appellants' second
point.(2) See Tex. R. App. P. 47.1.
V. Strict Liability
Under the Act
In their fifth point, appellants
contend that the trial court erred in granting the plea to the jurisdiction
because sovereign immunity can be waived for strict liability under the Act. UNT
responds that neither appellants' nor Harvey's pleadings were sufficient to
establish waiver of sovereign immunity.
Because appellants rely on section
82.002 and the TTCA as authority for their strict liability claim against UNT
and we have concluded that section 82.002 does not waive immunity, we overrule
appellant's fifth point. See Loyd v. ECO Res., Inc., 956 S.W.2d 110,
125 (Tex. App.--Houston [14th Dist.] 1997, no pet.) (finding no
authority for waiver of immunity for strict products liability claim).
VI. Conclusion
Having sustained appellants' fourth
point, which relates to notice only, and having overruled their remaining
points, we affirm the trial court's judgment.
 
                                                                       
TERRIE LIVINGSTON
                                                                       
JUSTICE
 
PANEL B: DAY, LIVINGSTON, and
HOLMAN, JJ.
DELIVERED: July 24, 2003

1. Appellants paid approximately $71,506.34 for the use of
UNT's facilities for the camp. This included UNT's agreement to prepare and
serve food and ice to the participants.
2. In their third point, appellants argue that the trial
court erred in granting the plea to the jurisdiction because the "Brown
and Root" opinions are still good law. See Keiffer v.
S. Pac. Transp. Co., 486 F. Supp. 798, 800 (E.D. Tex. 1980); Brown
& Root, Inc. v. City of Cities Mun. Util. Dist., 721 S.W.2d 881, 883-84
(Tex. App.--Houston [1st Dist.] 1986, no writ); City of Denton v.
Mathes, 528 S.W.2d 625, 632 (Tex. Civ. App.--Fort Worth 1975, writ ref'd
n.r.e.). Because these cases discuss a cross-defendant's ability to rely on the
underlying plaintiff's personal injury claim to satisfy the section 101.021
personal injury requirement and we have already concluded that we need not
address the personal injury issue, we conclude that we do not need to address
appellants' third point. See Tex. R. App. P. 47.1.