

# NUMBER 13-25-00272-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

BROWNSVILLE PUBLIC
UTILITY BOARD,                                                                           Appellant,

v.

ENCARNACION GAMEZ,
FEDERICO FLORES,
JESUS GALVAN,
AND RAMON GARCIA,                                                                        Appellees.

## ON APPEAL FROM THE 103RD DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellant Brownsville Public Utility Board (BPUB) argues by one issue that the trial

court improperly denied its plea to the jurisdiction based on governmental immunity.

BPUB's argument centers on the fact that appellees failed to produce any rebuttal evidence after BPUB's plea to the jurisdiction included evidence that would defeat subject matter jurisdiction. Because we agree that BPUB's jurisdictional evidence shifted the burden to appellees to create a fact issue, and they failed to produce any evidence supporting jurisdiction, we reverse and render.

## I.     BACKGROUND

This accelerated interlocutory appeal arises from alleged age discrimination by BPUB against appellees Encarnacion Gamez, Federico Flores, Jesus Galvan, and Ramon Garcia. Appellees filed suit on September 29, 2021, asserting they were constructively discharged due to their age. Appellees each alleged the following facts regarding their employment history with BPUB.

Gamez started working for BPUB in October 1980, initially as a maintenance mechanic helper, and was promoted several times throughout his thirty-eight years of employment, eventually earning the title of foreman. During his employment, Gamez earned a class "A" commercial driver license (CDL), a surface water treatment plant license, a distribution license, and a wastewater treatment plant license. Gamez contended these licenses were not required to work at the treatment plants, but he wanted to "enhance the jobs that he was assigned to do for 38 years." Gamez claimed that in May 2019, he was suddenly called to meet with several managers and told that he lacked a Wastewater Collection System Operator Class II (Collection II) license and would be demoted to Shift Supervisor despite never having been required to hold such a license in his twenty-three years as a foreman. He also contended that he was not given any advance notice of the need for the license and was given only a week to accept the

2

demotion, retire, or quit. Gamez claimed he wanted to sit for the exam to obtain the Collection II license and communicated that to BPUB, who told him he could accept a demotion until he took an exam but was not guaranteed to return to his former position. Rather than risk reduction of his retirement benefits, he opted to retire. Gamez contends he was threatened with demotion because he was fifty-eight years old and that he was replaced by a younger person who lacked the Collection II license.

Flores began employment with BPUB in March 1990, rising from wastewater operator to lead mechanic over the years of his employment. He claimed that BPUB told him in May 2019 that he was being demoted due to lacking the minimum qualifications despite holding "the highest waste water operator license" and never receiving any advance notice that his qualifications were lacking or being offered training. Flores chose to retire rather than accept demotion. Flores contended that he was threatened with demotion because he was fifty-four years old and was replaced by a "younger less qualified employee" following his forced retirement.

BPUB hired Galvan in June 1981 and rose to lead mechanic by 2019. Galvan claimed that the requirements for the mechanic position changed throughout his employment and started to require a collections license and "a COL Class B." He asserted that five years before the suit's events, BPUB informed the senior master mechanics that had over thirty years of employment that they would be "grandfathered" and not required to obtain the licenses. Galvan claimed he had held the Collection I license at one point but that his supervisor failed to submit the license renewal. Galvan asserted that he was later informed in late 2018 he would need the collection license, but, despite repeated requests to take the classes to obtain the license, his supervisor told him no budget was

available as younger employees were being prioritized for the classes, and "since he was close to retirement . . . there was no point in him taking the classes." BPUB eventually told him in May 2019 that he would be demoted from lead mechanic to mechanic, and they allegedly demoted him without receiving an answer from him. He eventually retired like the others rather than accept the demotion. He asserted in his suit that he was threatened with demotion because he was fifty-seven and "[h]is position was filled by a younger less qualified worker."

Garcia worked for BPUB from 1990 to 2019 and became a Shift Supervisor in 2019. Garcia appeared to allege that the job descriptions requiring collection licenses were changed without his or others knowledge. He also claimed that such licenses were only required for the lift station department, not the water/wastewater plant, and that he held the required licenses for his department during his employment. He claimed like the others that he was suddenly informed in May 2019 that he lacked the proper licenses and was threatened with demotion to maintenance mechanic, the lowest position in his department. Also like the others, Garcia chose to retire to "protect his retirement." He alleged that a younger employee took his job and that he was fifty-three at the time of the threatened demotion.

BPUB responded to the suit by filing an answer and plea to the jurisdiction. The plea to the jurisdiction asserted BPUB had governmental immunity and that appellees failed to timely exhaust their administrative remedies by failing to timely file suit after the Texas Workforce Commission issued notices of their right to sue. After initially setting the plea to the jurisdiction for a hearing, the parties agreed to reschedule the hearing several times to allow discovery to be completed.

4

BPUB amended its plea to the jurisdiction following completion of discovery and asserted that appellees failed to allege a prima facie case of age discrimination, as their petition admitted that they lacked the proper qualifications for their positions. BPUB also attached as evidence the job descriptions for all four appellees' positions and deposition testimony. Specifically, as to Gamez, BPUB attached job descriptions for his position from 2013 and 2015, years prior to 2019, that indicated the Collection II license was required within one year of employment. In his deposition, Gamez's admitted that his job description required a Collection II license and that he lacked such license at the time he retired. For Flores, BPUB attached a job description from 2015 indicating that he was required to have a class B CDL within six months of employment, and a Collection II license and a Collection III license within one year of employment. His deposition testimony also established that he lacked all three licenses.

Regarding Galvan, BPUB attached a 2013 and 2015 job description for his position that required him to obtain a Collection II license and a Collection III license within one year of employment. His deposition testimony indicated he never obtained the required licenses while employed with BPUB. Finally, as to Garcia, BPUB attached job descriptions from 2012 and 2015 that required him "to hold or be able to obtain a certification for the wastewater collection and/or water distribution system." Garcia testified at his deposition that he lacked the certifications and licensing requirements for his position. Appellees did not file a response to either the original or amended plea to the jurisdiction.

The trial court held a hearing on the amended plea to the jurisdiction on April 2, 2025. Appellees' counsel did not appear at the first hearing. BPUB's counsel argued

5

regarding the lack of qualifications for the positions and the undisputed evidence in support. The trial judge questioned the length of time it took to determine appellees' lack of qualifications and questioned the demotion after the appellees had been performing their duties for years. After expressing hesitation at granting the motion, the trial court continued the hearing to April 15, 2025.

At the next hearing, the trial court orally denied BPUB's motion and then signed an order denying BPUB's amended plea to the jurisdiction on April 28, 2025. This accelerated interlocutory appeal followed. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); TEX. R. APP. P. 28.1(a).

## II. ANALYSIS

BPUB's sole issue asserts that it presented undisputed evidence challenging jurisdictional facts that defeated the trial court's subject matter jurisdiction. Specifically, BPUB attached appellees' job descriptions and deposition testimony to argue that appellees were unqualified for the positions they held. Because appellees never filed any controverting evidence, BPUB's contends their plea should have been granted as a matter of law.

### A. Standard of Review

"A plea to the jurisdiction challenges the existence of subject matter jurisdiction; that is, the court's power to decide the case." *Herrera v. Mata*, 702 S.W.3d 538, 541 (Tex. 2024) (citing *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015)). "The trial court's ruling on a plea to the jurisdiction is a question of law we review de novo." *Id.* (citing *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016)). In de novo review, no deference is given to the trial court's decision. *See In re*

6

*Est. of Slaughter*, 305 S.W.3d 804, 808 (Tex. App.—Texarkana 2010, no pet.) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)).

Plaintiffs bear the initial burden to plead facts affirmatively demonstrating the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). Jurisdiction can then be challenged based either on the pleadings or on the existence of jurisdictional facts. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). We construe pleadings liberally in favor of the pleader and a plaintiff "should be afforded the opportunity to amend" if the challenged jurisdictional defect may be cured with further factual allegations. *Tex. Tech. Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024). We cannot sustain a plea to the jurisdiction if the pleadings generate a fact question. *Ryder Integrated Logistics, Inc. v. Fayette Cnty*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam); *see also City of Corpus Christi v. Muller*, No. 13-18-00443-CV, 2019 WL 2384162, at *1 (Tex. App.—Corpus Christi–Edinburg June 6, 2019, no pet.) (mem. op.).

However, "[w]hen a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Swanson*, 590 S.W.3d at 550 (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). We must consider evidence even when the jurisdictional issue intertwines with the merits of the case. *Id*. If jurisdictional facts are challenged, our standard of review mirrors that of a summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018). We take as true all evidence favorable to the nonmovant, indulge every reasonable inference and resolve doubts in the nonmovant's favor, and disregard contrary evidence if a reasonable factfinder could do so. *Id*. at 771.

It is foundational that the "party suing the governmental entity bears the burden of affirmatively showing waiver of immunity." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). Thus, a plaintiff can only survive a plea to the jurisdiction "by showing that the statute 'clearly and affirmatively waive[s] immunity' and by also 'negating any provisions that create exceptions to, and thus withdraw, that waiver.'" *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024) (quoting *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023)).

## B.      Applicable Law

BPUB is an entity created by the City of Brownsville, and as a political subdivision of the State, is generally immune from suit unless immunity has been clearly and unambiguously waived by the legislature. *See* TEX. GOV'T CODE ANN. § 311.034; *City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018). The Texas Commission on Human Rights Act (TCHRA) prohibits adverse employment actions against employees based on age. *See* TEX. LAB. CODE ANN. § 21.051. The "TCHRA 'clearly and unambiguously waives immunity' for claims against governmental entities like [BPUB]." *United Indep. Sch. Dist. v. Mayers*, 665 S.W.3d 775, 781 (Tex. App.—San Antonio 2023, no pet.) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008)).

However, the "TCHRA waives immunity from suit only for statutory violations, which means the trial court lacks subject-matter jurisdiction over the dispute absent some evidence [BPUB] violated the TCHRA." *Clark*, 544 S.W.3d at 763. To establish a prima facie case of age discrimination under the statute, appellees had to prove they: (1) were members of a protected class (40 years or older); (2) were qualified for the position at

issue; (3) suffered a final, adverse employment action; and (4) were replaced by someone significantly younger or otherwise treated less favorably than others similarly situated but outside the protected class. *See Tex. Tech Univ. Health Scis. Ctr.–El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020); *see also City of McAllen v. Rodriguez*, No. 13-24-00063, 2025 WL 924691, at *5 (Tex. App.—Corpus Christi–Edinburg Mar. 27, 2025, no pet.) (mem. op.). If appellees rely on circumstantial evidence to establish a discrimination claim, "we follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*[, 411 U.S. 792 (1973)]." *Flores*, 612 S.W.3d at 305.

Under this framework, appellees must first create a presumption of illegal discrimination by establishing a prima facie case. *See id*. If successful, BPUB must rebut that presumption by producing evidence of legitimate non-discriminatory reasons for the action, which appellees would then be required to overcome by producing evidence that BPUB's stated reason is merely a pretext. *See id*. Appellees' failure to establish a prima facie case or failure to overcome rebuttal evidence mandates dismissal. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Rodriguez*, 2025 WL 924691, at *5.

**C.    Discussion**

BPUB contends that appellees failed to establish a prima facie case because they failed to produce evidence indicating they were qualified for the positions at issue. Conversely, appellees argue they have asserted sufficient facts to show they were qualified for their positions. Appellees rely on the factual allegations in their petition that each of them had worked for BPUB for multiple decades and had worked in their present

9

positions for multiple years, arguing that they were qualified by virtue of their experience and that BPUB's requirement of certain licenses to hold the positions was never previously enforced. Though not explicitly stating so in their brief or petition, appellees appear to imply that because of their experience, that the license requirement was merely a pretext for forcing them to retire due to their age. Accordingly, because appellees do not rely on direct evidence of discrimination, we follow the *McDonnell Douglas* framework. *See Flores*, 612 S.W.3d at 305.

Based solely on appellees' pleading, and construing it liberally as we must, we will assume without deciding that appellees have alleged a prima facie case of age discrimination and thus created the presumption of illegal discrimination. *See Martinez*, 691 S.W.3d at 419; *Flores*, 612 S.W.3d at 305. They each alleged that they were a member of a protected class (all fifty-three years or older at the time of their "forced retirement"), were qualified for their positions due to their extensive experience, suffered a final adverse employment action (i.e. being forced to retire because they were threatened with demotion), and were replaced by someone significantly younger and less qualified for their positions. *See Flores*, 612 S.W.3d at 305.

However, BPUB challenged jurisdiction by producing evidence regarding the license requirements at issue. Specifically, BPUB produced both documentation and deposition testimony indicating that the license requirements were not as sudden as appellees alleged but were in fact in place years prior to BPUB seeking to demote appellees or asking them to retire. This evidence rebuts the presumption of illegal discrimination because it establishes a legitimate non-discriminatory reason for the employment action, namely, that the appellees were lacking the proper license

10

requirements for years prior and that appellees' narrative that each was suddenly told about the need for licenses, and not given proper time to obtain the licenses, was untrue. *See Flores*, 612 S.W.3d at 305. Because evidence was produced negating jurisdictional facts, our review mirrors that of a summary judgment. *See Clark*, 544 S.W.3d at 770–71.

BPUB argues that appellees failed to produce any evidence of their qualifications in response to BPUB's evidence and failed to create a fact issue as a result. Appellees bore the burden to overcome BPUB's evidence by producing evidence that the license requirements were merely a pretext. *See Flores*, 612 S.W.3d at 305. Here, such evidence could potentially include contravening deposition testimony or documentation indicating that BPUB was seeking to fire their older employees due to their age, or that enforcement of the license requirements was for the purpose of promoting or hiring younger workers who were permitted to obtain licenses. Appellees' only allegation of pretext was that the younger employee replacing Gamez lacked the same license Gamez was told was required. There were no other allegations of pretext as to the other appellees. However, despite notice of the plea to the jurisdiction hearing and substantial completion of discovery, appellees failed to produce any evidence of the sort discussed above or evidence that Gamez was, in fact, replaced by an unlicensed younger employee.[1]

Appellees' pleading allegations alone are insufficient to overcome BPUB's evidence of a non-discriminatory reason for the action. *See id*. The evidence here is thus undisputed, and appellees failed to create a fact issue regarding the non-discriminatory reason for their demotion or requested retirement. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). We are accordingly required to dismiss

---

[1] We note that nothing in the evidence produced by BPUB raised a fact question on pretext.

appellees' claims as a matter of law. *See Garcia*, 372 S.W.3d at 635; *see also Rodriguez*, 2025 WL 924691, at *5. We sustain appellant's sole issue.[2]

### III.    CONCLUSION

Appellees failed to present evidence to create a fact issue on BPUB's amended plea to the jurisdiction. Accordingly, we reverse the trial court's denial of the amended plea and render judgment dismissing the case for lack of jurisdiction.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
6th day of November, 2025.

---

[2] Although appellees also raised failure to exhaust administrative remedies as a jurisdictional impediment in the trial court, they have not brought that argument forward on appeal. Because we already resolve the jurisdictional issue in this matter under *McDonnell Douglas*, we need not reach this other jurisdictional issue sua sponte. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (explaining that appellate courts "are obligated to review *sua sponte* issues affecting jurisdiction"); TEX. R. APP. P. 47.1.